### SHELDON ROBINSON v. THE FLINT & PERE MARQUETTE RAILROAD COMPANY.

*Negligence—Highways—Right of cattle to run at large therein—*
*Contributory negligence of owner—Railroad companies—*
*Speed of train.*

1. In turning his cattle at large in the public highway near a railroad crossing, without a keeper, the owner is guilty of contributory negligence

79 323
80 199

79 323
85 396

79 323
93 810

79 323
96 329

79 323
109 511

79 323
j147 ²300

79 323
f153 ¹417

79 323
154 ²660
154 661

79 323
e157 ²162

So *held*, where the railroad company had complied with the provisions of the statute in regard to fencing its road, and in constructing said crossing with due regard to the safety of persons passing over it, and provided its engines with the proper appliances, and plaintiff's ox was killed while attempting to cross in front of a train, and because the engineer could not check the speed of the train in time to avoid the accident, after he saw the danger.

2. The following propositions are summarized from the opinion of Mr. Justice GRANT:

*a*—By the common law, every person must keep his animals upon his own premises. He may use the highway for the purpose of driving them from place to place, but not for a public pasture. He may pasture in the highway opposite his own premises, but not opposite those of others, even though the cattle are in charge of a keeper. *Campau v. Konan*, 39 Mich. 362; *Bertwhistle v. Goodrich*, 53 Id. 457.

*b*—It was doubted by this Court, in *Campau v. Konan*, 39 Mich. 362, whether authority could be conferred upon the board of supervisors to permit beasts to run at large upon public highways; and a similar provision was held unconstitutional in *Railroad Co. v. Munger*, 5 Denio, 255.

*c*—A railroad company which has complied with the provisions of the statute in regard to fencing its road, and in constructing highway crossings with due regard to the safety of persons and property passing over them, and has provided its engines with the proper appliances, is entitled to the use of its road for the passage of trains at all times, to increase the speed of its regular trains when behind time, and to run special or wild trains whenever its business requires.

*d*—The business of the country demands of railroads rapid transit, both for persons and property. It has nowhere been held that a speed of even 60 miles an hour is negligence, when a train is running through the country outside of villages and cities, or through a sparsely settled community.

*e*—Railroad companies are not required to slacken the speed of their trains at the numerous highway crossings in the country which they are usually passing every few minutes, nor when cattle are in the highway near the track. Only when the engineer, in the exercise of due care and caution, *sees* danger, is he required to slacken speed. He is then bound, from regard for the rights of all parties concerned, to take all proper steps to avoid danger. But in such a case his first duty is for the safety of his passengers, and it is held that, when he cannot stop his train before striking the cattle, he is justified in running at a high rate of speed, if in so doing there

is less danger of derailing his train, though the result is to render the escape of the cattle more difficult. 1 Thomp. Neg. 506, and cases cited.

*f*—It has been held that not only has the owner of cattle running at large in the highway no recourse against a railroad company for the loss of his property, but that he is liable for damage resulting to the company or its passengers. *Railroad Co. v. Skinner*, 19 Penn. St. 303; *Bennett v. Railroad Co.*, 19 Wis. 148; *Railway Co. v. Goss*, 17 Id. 433.

*g*—In the case of *Railroad Co. v. Ballard*, 2 Metc. (Ky.) 177, it was held that a peculiar obligation devolved upon the owner of cattle to keep them off the tracks of railways, and that there could be no recovery unless the conduct of the company was shown to have been reckless, wanton, and willful.

*h*—A man who permits his dumb beasts to roam at large, where it is highly probable, if not inevitable, that they will run into dangerous places, ought to be judged by the same rule as when he places himself in the presence of danger, and thereby suffers injury, which his own prudence might have avoided.

Error to Isabella. (Hart, J.) Argued January 14 and 15, 1890. Decided January 31, 1890.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*W. L. Webber*, for appellant.

*John Giberson*, for plaintiff.

GRANT, J. Plaintiff's ox was killed upon a highway, while crossing over the defendant's road, by a train of cars. He brought suit, claiming that the ox was killed by defendant's negligence.

The declaration contained three counts. The first count alleged that the negligence consisted in running its train at a high and dangerous rate of speed, and neglecting to slow up when it was seen that the ox was in danger. The second count alleged that the defendant carelessly and negligently caused an embankment of sand and gravel to be formed on each side of its track, from two to three

feet high, and permitted the same to remain several days, and that the ox was retarded in consequence, while crossing the track. The third count combines both these allegations of negligence, and the further one that defendant neglected to sound the bell and blow the whistle forty rods from the crossing, as required by statute.

The undisputed facts are these: The crossing was on a public highway in the country, near the plaintiff's farm. There were two crossings, one of which led into the plaintiff's yard, and on which the ox was killed, but both were in the highway, and used by the public. The train was a wild one; that is, one which was not running upon schedule time. The ox was one of a herd, about fifteen in number. All the others had passed over the track before the engine reached the crossing. Plaintiff saw the cattle and the train. He testifies that the engineer blew the customary danger signals—three sharp toots—when within about fifteen rods of the crossing. His cattle were running at large in the highway. He knew this, for he and his son were at work in his field a short distance away, and saw them. He testifies:

" I saw quite a number of the cattle, just a little while before the train came down. They were about three or four rods east of the crossing, in the public highway."

The bell was rung automatically, by air. The testimony as to the speed of the train, the blowing of the whistle forty rods from the crossing, and the embankment of sand and gravel, was conflicting. Some of plaintiff's witnesses estimated the speed at from fifty to sixty miles an hour. The engineer testified that he blew the whistle; that he was running about forty miles an hour, till within about twenty rods of the crossing, when he suddenly saw the cattle coming towards the track; that he immediately shut off steam, applied the brakes, and did all he could to stop the train, except to reverse

the engine; that a reversal of the engine would have endangered the lives of those on board.

The important question submitted upon this record is this: Was the plaintiff guilty of contributory negligence in permitting his cattle to run at large in the public highway, near this crossing, without any keeper? By the common law, every person must keep his animals upon his own premises. He may use the highway for the purpose of driving them from place to place. He cannot use it for a public pasture. He may pasture in the highway opposite his own premises, for he is entitled to the herbage growing there. He is not entitled to pasturage opposite the lands of others, even when the cattle are in charge of the keeper. *Campau v. Konan*, 39 Mich. 302; *Bertwhistle v. Goodrich*, 53 Id. 457 (19 N. W. Rep. 143). Such use is not an incident of travel for which the highway is dedicated to or appropriated by the public.

In *Campau v. Konan*, it was doubted by this Court whether authority could be conferred upon the board of supervisors or any other body to permit beasts to run at large upon public highways. A similar provision was held unconstitutional and void by the court of appeals of New York. *Railroad Co. v. Munger*, 5 Denio, 255. Section 8, Act No. 185, Laws of 1887, provided that the act should not apply to that portion of the State lying north of the tier of townships 12 N., unless so ordered by the board of supervisors of any county lying north of said tier of townships. The township in this case lies north of that line. That act, therefore, conferred no right to the use of the highway in that part of the State that did not exist at common law. The rule of the common law prevails in this State, and in many of the other states. The act above mentioned, therefore, has no bearing upon the determination of the question in issue.

It is to be presumed that the defendant had complied with the provision of the statute in regard to fencing its road, and constructing this crossing with due regard to the safety of persons and property passing over it, and providing its engine and cars with the proper appliances. Having done this, it was entitled to the use of its road for the passage of trains at all times, to increase the speed of its regular trains when behind time, and to run special or wild trains whenever its business required. The law did not limit the rate of speed of its trains. The business of the country demands of railroads rapid transit, both for persons and property. It has nowhere been held that a speed of even 60 miles an hour is negligence, when a train is running through the country outside of villages and cities, or through a sparsely settled community. It is well known that trains are now being run in many parts of the country at the rate of 50 to 60 miles an hour.

It is difficult to see how the blowing of the whistle 40 rods from the crossing would have prevented the injury. Juries must not be left to conjecture. Not only must the negligence be proven, but also it must be shown that it caused the injury. In *Railway Co. v. Shannon*, 38 Kan. 477 (16 Pac. Rep. 836), a case very similar in its facts to the case at bar, the following question was submitted to the jury:

"As the plaintiff and his cattle were situated when the train was eighty rods west of the crossing, could a whistle blown upon the locomotive have prevented the injury?" to which the jury answered: "We do not know."

Under this answer, the court held that the omission to blow the whistle was unimportant in the case. A contrary finding by the jury in this case, as well as in that, would have been mere conjecture.

The fair and legitimate conclusion from the evidence in

this case is that the ox was killed while attempting to cross in front of the train, and because the engineer could not check the speed of the train in time to avoid the accident, after he saw the danger. Railroad companies are not required to slacken the speed of their trains at the numerous highway crossings in the country which they are usually passing every few minutes. To do so would seriously and unnecessarily retard their and the public business. In fact, they could not well fulfill their contracts for the carriage of mails, passengers, and freight, and supply the growing demand of commerce. Nor are they obliged to slacken their speed when cattle are in the highway near the track. Only when the engineer, in the exercise of due caution, sees danger, is he required to slacken the speed. He is then bound, from regard for the rights of all parties concerned, to take all proper steps to avoid the danger. But in such case the first duty of the engineer is for the safety of his passengers, and it is held that, when he cannot stop his train before striking the cattle, he is justified in running at a high rate of speed, if in so doing there is less danger of derailing his train, though the result is to render the escape of the cattle more difficult. 1 Thomp. Neg. 506, and cases there cited.

In turning his cattle at large in the public highway near this crossing, without a keeper, the plaintiff was guilty of contributory negligence. Due regard for the safety of human life and property forbids a person to turn his dumb animals at large, under such circumstances. This rule is dictated alike by good sense and the feeling of common humanity. The owner is conclusively presumed to know that his animals may get upon the crossing, and thereby incur not only the risk of their own destruction, but also endanger the lives of passengers and the safety of property of great value. The destruction of plaintiff's

ox is as directly attributable to his own negligent act as to any negligence alleged against the defendant.

In the case of *Railroad Co. v. Skinner*, 19 Penn. St. 303, the supreme court of Pennsylvania held that not only did the owner of cattle running at large have no recourse against the company for the loss of his property, but that he was liable for damage resulting to the company or its passengers. It that case the court say.

"If an owner suffer his cattle to be at large, it must be at a risk of losing them, or paying for their transgressions. The very act of turning them loose is negligence. * * * That he is not answerable * * * criminally, * * * is because mischief was not intended by him."

In *Bennett v. Railroad Co.*, 19 Wis. 148, plaintiff sued to recover damages for injury to a colt which had strayed from a common upon the depot grounds of the defendant. The court say:

"In permitting the colt to run at large on a common adjoining the railroad and depot grounds, from whence he would probably, if not certainly, stray upon the track, and be exposed to collision with trains of cars passing by, thereby endangering the lives and persons of all on the trains, the plaintiff himself was guilty of very great negligence."

And in *Railway Co. v. Goss*, 17 Wis. 433, the court say:

"If the owner rashly or carelessly allows his oxen or horses to go upon the road, and they are killed by the gross negligence of the company, * * * it is gross negligence against gross negligence, and there can be no apportionment of damages. In such case it would seem that nothing short of proof of wanton or malicious injury would entitle him to compensation."

In the case of *Railroad Co. v. Ballard*, 2 Metc. (Ky.) 177, cited by plaintiff's counsel, the court held that a peculiar obligation devolved upon the owner of cattle to keep them off the tracks of railways, and that there

could be no recovery unless the conduct of the company was shown to have been reckless, wanton, and willful. In that case the declaration alleged such misconduct. In this case no such misconduct is alleged, nor is there any evidence to show it. A man who permits his dumb beasts, which cannot reason or appreciate danger, to roam at large, where it is highly probable, if not inevitable, that they will run into dangerous places, ought to be judged by the same rule as when he places himself in the presence of danger, and thereby suffers injury, which his own prudence might have avoided. In the latter case, courts almost uniformly hold that he cannot recover. On what principle can he be entitled to recover in the former? The plaintiff's contention would result in establishing the rule that he owes the defendant no duty in the care of his cattle upon public highways, and that he is entitled to the absolute presumption that the defendant's servants will always operate its trains with the care and vigilance required by law. This is not the rule. *Railroad Co. v. Trust Co.*, 23 Fed. Rep. 738. The circuit judge should have charged the jury that the plaintiff was guilty of contributory negligence, and instructed them to find a verdict for the defendant. It is unnecessary to notice the other assignments of error.

Judgment below reversed, and new trial ordered.

CHAMPLIN, C. J., and CAMPBELL, J., concurred. MORSE, J., did not sit.