GEECK v. LUCKENBILL.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—IMPUTABLE TO PLAINTIFF.

In an action for personal injuries received by plaintiff in a collision at a highway intersection in the country between an automobile in which he was riding and the one driven by defendant, the contributory negligence of the driver of the car in which plaintiff was riding was imputable to plaintiff.

2. SAME—DIRECTED VERDICT.

In said action, testimony by plaintiff and the driver of the car in which he was riding that they observed defendant's automobile coming down the intersecting highway about 40 rods away at about twice the rate of speed at which they were going, but that they continued at the same rate of speed, and did nothing to prevent the collision, which could easily have been avoided, they were guilty of contributory negligence as a matter of law, precluding plaintiff's recovery, notwithstanding defendant's negligence. MOORE, J., dissenting.

3. SAME—COMPARATIVE NEGLIGENCE NOT OPERATIVE IN MICHIGAN.

Where plaintiff is guilty of contributory negligence he may not recover although defendant's negligence be greater in degree than plaintiff's, since the respective degrees of negligence may not be compared under the law in this State.

Error to Shiawassee; Collins (Joseph H.), J. Submitted June 15, 1921. (Docket No. 55.) Decided July 19, 1921.

Case by Joseph Geeck against George Luckenbill and another for personal injuries. Judgment for plaintiff. Defendant Luckenbill brings error. Reversed, and no new trial ordered.

On liability for collision between automobiles or an automobile and another vehicle at or near corner of street or highways, see note in L. R. A. 1916A, 745.

*Matthews & Hicks,* for appellant.

*George E. Pardee (John T. McCurdy,* of counsel), for appellee.

SHARPE, J.   On the morning of November 3, 1918, plaintiff was riding with one Finley Reed in a Paige automobile on a highway running east from the city of Owosso.   At the point of intersection of this highway with one running north and south, called Venice Center, this automobile collided with a Ford car, driven by the defendant George Luckenbill.   The plaintiff was seriously injured as a result of the collision, and brought this suit to recover damages therefor.   A verdict was directed as to John Luckenbill.   A judgment in plaintiff's favor for $1,000 against the other defendant is reviewed by him on writ of error.

The principal assignment relied on is that Reed was guilty of negligence which contributed to plaintiff's injury.   The defendant's negligence is conceded.   It is also conceded that any negligence on the part of Reed is imputable to plaintiff under repeated decisions of this court.   *Mullen* v. *City of Owosso,* 100 Mich. 103 (23 L. R. A. 693, 43 Am. St. Rep. 436) ; *Hampel* v. *Railroad Co.,* 138 Mich. 1 (110 Am. St. Rep. 275) ; *Kasprzak* v. *Chapman,* 197 Mich. 552; *Donlin* v. *Railway,* 198 Mich. 327.

There was no obstruction to prevent either Reed or the defendant from observing the approach of the other for a distance of about 40 rods from the intersection.   Reed testified that when his car was about 15 rods from the corner he saw the defendant's car about 30 rods north of the corner.   He claims to have been driving at a speed of from 15 to 20 miles an hour.   He further testified:

"*Q.* How long, after you first saw him up there com-

ing, was it before you looked again to see where he was?

"*A.* Just as I approached the corner.

"*Q.* About how far would you be from the intersection here then at the time you looked the next time?

"*A.* Why, I couldn't tell. Just a little ways from it.

"*Q.* What do you mean by little ways? 30 feet?

"*A.* Oh, more than that.

"*Q.* 60 feet?

"*A.* Yes.

"*Q.* 60 feet from the point where the center of these intersections would cross here, you looked again to see where this automobile was?

"*A.* I glanced up and saw that he was coming and had gained on me, but I still had plenty of room to pass the corner.

"*Q.* How far was he from the corner at the time you looked up and saw you were 60 feet from the intersection and how far was he at that time from the intersection?

"*A.* Nearly double that, I thought.

"*Q.* You thought he was about 120 feet back there?

"*A.* Somewhere. * * *

"*Q.* If you were going 18 or 20 miles an hour, how far would your car go after you started to make an effort to stop, using your utmost endeavors to stop?

"*A.* I don't know. I couldn't go a great ways.

"*Q.* How far?

"*A.* I don't believe it would go twice the length of it.

"*Q.* Then at the time you were 60 feet from the corner and he was 120 feet, had you applied your brakes, you could have stopped before you got to the corner?

"*A.* I think I could. * * *

"*Q.* You could see at the time that you were 60 feet from the crossing that he was coming very rapidly, couldn't you?

"*A.* Yes, I saw he was coming rapidly. I thought I had plenty of time to pass the corner before he got there. My engine is a six cylinder. Rated at twenty-five horse power. I have never let it out as fast as it would go.

"*Q.* It would have certainly been possible for you to have increased your speed beyond 18 miles an hour

had you deemed it advisable and wanted to at any time that morning, would it not?

"*A*. It would be, I could have increased it.   *   *   *

"*Q*. At the time you were going from the point 60 feet back from the center, when you discovered this car was near you, what if anything did you do?

"*A*. I kept right on going, that is all.

"*Q*. Is that all you did?

"*A*. I didn't have any thought of his running into me.   I thought he would pass by the corner.

"*Q*. No, answer that question.   Was that all you did?

"*A*. I was driving the automobile.

"*Q*. No.

"*A*. That is all I done that I know of.

"*Q*. Well, in driving the automobile, all that you did was to hang onto the wheel and keep it going, is that true?

"*A*. That's all.

"*Q*. Is there any horn on your car?

"*A*. Yes, yes.

"*Q*. You didn't blow your horn?

"*A*. No.

"*Q*. You didn't shout at Mr. Luckenbill?

"*A*. No.

"*Q*. You didn't give any sound or warning with your horn as you approached this intersection?

"*A*. No.  *   *   *

"*Q*. If you had been observing him from the time you first saw him up until the second time you saw him, you would have realized he was coming very fast, would you not?

"*A*. I presume I would have realized it better than I did.

"*Q*. And you would have then been in a position to have protected yourself and have prevented the accident, would you not?   Do you understand the question?

"*A*. If I had observed him and not paid attention to anything else, I might have known.

"*Q*. If you had observed him, you would have seen that he was coming quite fast, wouldn't you?

"*A*. Why, I suppose I would.

"*Q*. You couldn't have helped it, could you?

"*A.* No, because he was coming fast, he must have been.

"*Q.* If you had looked, you would have discovered that fact?

"*A.* I saw him.

"*Q.* I say, if you had kept your eye on him from the time you first saw him until you saw him a few feet away from you, you would have discovered that, wouldn't you?

"*A.* Yes, probably.

"*Q.* You could have put on more power, gone faster and gone past the corner very easily?

"*A.* I presume I could.

"*Q.* You could have put on brakes? If you had slowed up a little he would have went by in front of you, wouldn't he?

"*A.* Yes.

"*Q.* What excuse have you for not looking when you first saw him 30 rods back there until it was within 120 feet of you?

"*A.* I had to pay attention to where I was going.

"*Q.* The road ahead of you was clear, wasn't it?

"*A.* Yes."

The plaintiff, who was riding beside Reed in the front seat, said his observation of defendant's car was similar to Reed's. He further testified:

"*Q.* Was there anything to prevent you from seeing this car all the time from the time you first saw it until the time when it was 60 feet from you?

"*A.* No, sir.

"*Q.* If you had looked, you would have been able to see that it was approaching the corner at exactly the same rate of speed or gaining on you sufficiently so you must come together at the corner, wasn't it?

"*A.* I wasn't running Mr. Reed's car.

"*Q.* No, but you could see if you had looked, you could have seen that that was what was going to happen, couldn't you?

"*A.* Yes, sir.

"*Q.* And you didn't look?

"*A.* I didn't look. * * *

"*Q.* Did he as he approached this corner sound his horn at any time?

"*A.* No, sir.

"*Q.* Did you at any time you saw this car 60 feet away from you, make any outcries or anything to attract the attention of the oncoming car?

"*A.* Not that I know of.

"*Q.* Do you know of any reason there was to prevent, if so state it, Mr. Reed from blowing his horn and attracting the attention of this car that was coming?

"*A.* No, sir.     *     *     *

"*Q.* What, if anything, did you do to prevent this accident?

"*A.* Nothing.

"*Q.* What did you see Finley Reed do to prevent the accident?

"*A.* The crash came so quick I didn't—

"*Q.* No.

"*A.* Nothing."

The claim is made by the defendant that Reed must have known by his observation that the defendant's car was traveling at about double the rate of speed of his car and when he observed it 120 feet distant from the intersection, his car being then 60 feet away, he should have watched its approach and, had he done so, the collision would have been avoided. The duty of both drivers is thus defined in section 4817, 1 Comp. Laws 1915:

"Upon approaching an intersecting highway, a bridge, dam, sharp curve or steep descent, and also in traversing such intersecting highways, bridge, dam, curve or descent, a person operating a motor vehicle shall have it under control and operate it at such speed as is reasonable and proper, having regard to the traffic then on such highway and the safety of the public."

The only traffic on either highway near this intersection was these two cars. It seems incredible that a collision could have occurred without negligence on the part of both drivers. Reed, when 60 feet from the corner, saw the defendant's car about double that dis-

tance therefrom. His former observation must have informed him that the defendant was driving about twice as fast as he was. If each continued at the rate of speed he was going, a collision was inevitable. While it was clearly the duty of defendant to have lessened his speed and allowed Reed to pass over the intersection before him, yet the fact that he did not do so did not relieve Reed from placing his car under control and operating it at such speed as was reasonable and proper. He admits that had he done so the collision would have been avoided. While the defendant was doubtless guilty of a greater degree of negligence than was Reed, the respective degrees thereof may not be compared under our law. The facts in this case are so nearly similar to those in *Ude* v. *Fuller*, 187 Mich. 483, that it is controlled thereby. In the opinion in that case, the testimony of the plaintiff is set out at length. It was held that he had—

"failed to use that reasonable degree of care to avoid injury proportionate to the circumstances which the law makes essential to a recovery, and by his own negligence contributed to the accident."

We feel constrained to so hold as to the conduct of Mr. Reed. See, also, *Zoltovski* v. *Gzella*, 159 Mich. 620 (26 L. R. A. [N. S.] 435, 134 Am. St. Rep. 752) ; *Gibbs* v. *Dayton*, 166 Mich. 263; *Westover* v. *Railway Co.*, 180 Mich. 373; *Winckowski* v. *Dodge*, 183 Mich. 303; *Miller* v. *Railway*, 200 Mich. 388; *Deal* v. *Snyder*, 203 Mich. 273.

The judgment is reversed, and no new trial granted.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred with SHARPE, J.

MOORE, J. (*dissenting*). I think the question of whether the plaintiff was in the exercise of the reasonable care required was a question for the jury.