MULVANEY *v.* NEW YORK CENTRAL RAILROAD CO.

1. RAILROADS — NEGLIGENCE — OBSTRUCTION OF VIEW OF CROSSING SIGNS.

In an action against a railroad company for the alleged negligent killing of plaintiffs' decedent, negligence may not be predicated upon the fact that the view of the crossing sign was somewhat obstructed by trees or shrubs on private property, in the absence of evidence of any statute requiring such signs, or permitting railroad companies to go upon private lands or public highways and remove such obstructions.[1]

[1]Railroads, 33 Cyc. p. 934.
On regulation of speed of railway train at country crossing, see note in 3 L. R. A. (N. S.) 536.

2. SAME—AS A GENERAL RULE SPEED OF TRAINS IN OPEN COUNTRY NOT LIMITED.

Although there are exceptions, it is the general rule that, when running in the open country, the speed of trains is not limited.[2]

3. SAME—SPEED OF TRAIN IN COUNTRY NOT NEGLIGENCE.

Running a passenger train at a speed of about 55 miles an hour through a sparsely settled country was not negligence where the highway and railroad crossed at practically right angles, both were practically straight, and a person 20 feet from the track could see up the track from a quarter to a half mile.[3]

4. SAME—TRIAL—NEGATIVE AS AGAINST POSITIVE TESTIMONY INSUFFICIENT TO TAKE QUESTION TO JURY—CROSSING SIGNALS.

Testimony by witnesses, who were not listening and did not know that they were approaching a railroad crossing, that they did not hear the crossing signals given was insufficient to take to the jury the question as to whether or not they were given, where there was direct and positive testimony that the signals were given.[4]

Error to Eaton; McPeek (Russell R.), J.    Submitted October 22, 1925.    (Docket No. 5.)    Decided December 22, 1925.

Case by Carrie Mulvaney, administratrix, and James Hamilton, administrator, of the estate of Raymond Mulvaney, deceased, against the New York Central Railroad Company and the Pere Marquette Railway Company for the alleged negligent killing of plaintiffs' decedent.    Judgment for plaintiffs.    Defendants bring error.    Reversed, and judgment ordered entered for defendants.

*W. K. Williams* and *John C. Shields,* for appellant Pere Marquette Railway Company.

*Samuel H. Kelley* and *J. Arthur Boice,* for appellant New York Central Railroad Company.

[2]Railroads, 33 Cyc. p. 971; [3]Id., 33 Cyc. p. 1088; [4]Id., 33 Cyc. p. 1099.

*Kent & Hayes (Peters & Marshall,* of counsel), for appellees.

FELLOWS, J.     Plaintiffs' decedent with one Kegley in the latter's car driven by him were struck at a country crossing in Indiana by a passenger train of defendant Pere Marquette Railway Company running over the line of defendant New York Central Railroad Company.     Kegley was instantly killed and decedent so seriously injured that he survived but a few hours. The accident occurred about 4 o'clock in the afternoon of August 24, 1923.     Decedent's home was in Eaton county and this action was brought there although plaintiffs' declaration counts on liability under the laws of Indiana.     While the declaration counts on numerous claims of negligence, in the final analysis plaintiffs rely upon negligence in but three particulars:

(1) That the crossing sign was so obstructed as not to permit a view of it to travelers on the highway and did not give warning to them that they were approaching a railroad.

(2) Excessive speed of the train.

(3) Failure to give the statutory crossing signals.

1. The crossing sign was the usual one, about 10 or 12 feet high, reading: "Railroad Crossing, Look Out for the Cars."     It stood at the side of the highway within the railroad right of way and the witnesses agree that there were no trees or shrubs upon the right of way which obstructed a view of it.     On private lands and along the highway, witnesses say, and the photographs introduced confirm their testimony, there were shrubs, trees and foliage which tended to obscure the view.     Our attention is called to no statute of Indiana requiring such signs or fixing their location, nor is our attention called to any statute of Indiana requiring or permitting a railroad company to go upon private lands or on the public highway outside

of its right of way and cut down trees and shrubs which tend to obstruct the view of crossing signs. The photographs introduced by plaintiffs establish such physical facts as to make it inconceivable that one giving any heed at all to the road ahead of him would not see the crossing and know that he was approaching a place of danger. We are unable to perceive any actionable negligence under this claim.

2. The train was a passenger train and was running about 55 miles an hour; the crossing was in the open country. The general rule is that when running in the open country the speed of trains is not limited. In *Robinson* v. *Railroad Co.*, 79 Mich. 323 (19 Am. St. Rep. 174), it was said:

"It is to be presumed that the defendant had complied with the provision of the statute in regard to fencing its road, and constructing this crossing with due regard to the safety of persons and property passing over it, and providing its engine and cars with the proper appliances. Having done this, it was entitled to the use of its road for the passage of trains at all times, to increase the speed of its regular trains when behind time, and to run special or wild trains whenever its business required. The law did not limit the rate of speed of its trains. The business of the country demands of railroads rapid transit, both for persons and property. It had nowhere been held that a speed of over 60 miles an hour is negligence, when a train is running through the country outside of villages and cities, or through a sparsely settled community. It is well known that trains are now being run in many parts of the country at the rate of 50 to 60 miles an hour."

Like most rules, this one has its exceptions, but we do not find this case falls within them. At the time of the trial the highway was a part of the trunk line system but it was not at the time of the accident; it was then used as a detour; one of plaintiffs' witnesses says the road was too rough to drive fast and the car

in which decedent was riding was going about 12 miles an hour. The country was sparsely settled, the nearest house being over a quarter of a mile distant. There was some testimony of a curve in the highway but the blueprint made by plaintiffs' surveyor shows that it was but slight; the highway and railroad crossed at practically right angles and both were practically straight. Plaintiffs' surveyor who testified to exact distances said that at a point 47.67 feet from the crossing he could see a man standing on the track 336.43 feet from the crossing and undisputed testimony shows that at a point about 20 feet from the track one could see up the track from a quarter to a half mile. The crossing was two miles from a town on one side and nine miles on the other. We think the case is within the rule and not the exception.

3. The Indiana statute as to crossing signals is substantially the same as ours. On the question of whether the crossing signals were given, plaintiffs produced two witnesses who were riding together in a Buick touring car on their way to Chicago. Without giving any testimony that they were paying any attention to the railroad or that they were listening for a train, they testified, over defendants' objection, that the whistle was not blown and the bell not rung. On cross-examination it developed that neither of them knew they were approaching a crossing until the train had reached the crossing when they heard the whistle and screeching of the wheels; neither testified that they were listening for a train. One of them testified:

"*Q.* You didn't know that you were approaching a crossing, then, did you?
"*A.* No, sir, I did not.
"*Q.* Then you were not listening for any whistle or bell?
"*A.* Well, I wasn't going fast enough—

"*Q.* I say you were not listening for any whistle or bell?

"*A.* No, I was not, no, sir."

And the other testified:

"You didn't hear the whistle before the train reached the crossing?

"*A.* No, sir.

"*Q.* Are you—do you want to swear, Mrs. Peacock, that the bell was not ringing, or do you want to be understood that you didn't hear?

"*A.* Never heard it.

"*Q.* Same is true of the whistle?

"*A.* I heard the whistle after the—

"*Q.* I mean before, Mrs. Peacock?

"*A.* Never heard no whistle.

"*Q.* You are not swearing that it was not blown? You are swearing that you did not hear it?

"*A.* Yes, that I didn't hear it, and that is the truth.'"

On behalf of defendants there was direct and positive testimony that the signals were given. Did this negative testimony make a case for the jury against the affirmative testimony produced by defendants? We think not. We have so recently reviewed the authorities on this question that it will be unnecessary to again do so. In *Lambert* v. *Railway Co.,* 209 Mich. 107, after considering former cases it was said:

"This analysis of the cases shows that in those relied upon by the plaintiff it was held that where the witnesses testified that they were listening, their attention was upon the train, its coming was upon their minds and they were paying heed to it, that then their testimony makes a case for the jury. This upon the theory that if they were listening, giving the train heed and attention, the probabilities are they would have heard the signals if they had been given. On the other hand the cases relied upon by the defendant's counsel hold that where the testimony does not show either that the witness was listening or otherwise giving heed and attention to the train, then testimony that he did not hear the signals does not take the case to the jury against positive testimony that the signals

were given.   This is upon the theory that it cannot be said that there is a probability that one not listening or giving any heed or attention to the train would have heard the signals if given."

Measured by this standard, plaintiffs did not make a case for the jury of failure to give the statutory signals.

Having reached the conclusion that no actionable negligence of defendant has been made out, it becomes unnecessary to consider the question of plaintiffs' contributory negligence.

Defendants were entitled to a directed verdict or to a judgment *non obstante veredicto,* the question having been reserved under the Empson act.

The judgment will be reversed and the case remanded with instructions to enter judgment for defendants.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.