BUCHTHAL v. NEW YORK CENTRAL RAILROAD COMPANY.

1. RAILROADS—SPEED OF TRAINS IN OPEN COUNTRY.
   The speed of railroad trains is not limited while they are traveling through open country.

2. EVIDENCE—JUDICIAL NOTICE—SPEED OF RAILROAD TRAINS.
   It is generally known that in the past 50 years the speed of railroad trains has been increased,

3. RAILROADS—NEGLIGENCE—SPEED.
   Negligence of railroad company may not be inferred from mere fact that it permitted a speed of 80 miles per hour on passenger trains being operated in open country where the track is straight for several miles and that train involved in accident with plaintiff was operated at that speed.

4. SAME—GRADE CROSSINGS—APPROACHING AUTOMOBILES.
   It is not incumbent upon operators of a railroad train to

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 44 Am Jur, Railroads §§ 456, 511.
[1–3] Speed of train, locomotive, or railway car at highway crossing, as negligence. 154 ALR 212.
[5] 44 Am Jur, Railroads § 510.
[6, 7] 44 Am Jur, Railroads § 622.
[8, 9] 39 Am Jur, New Trial § 160.

stop it or slow it down merely because automobiles' are approaching a grade crossing unless danger is apparent.

5. SAME—OBSERVATION OF GRADE CROSSING—APPROACHING AUTOMOBILES.

Omission of crew on northeastbound train, proceeding at 80 miles per hour, to make actual observation of country grade crossing where plaintiff, as a passenger, was in an eastbound automobile moving across double track at speed of 2 or 3 miles an hour did not constitute negligence, since realization by crew from an observation that the driver intended to continue would obviously be too late to prevent the accident.

6. SAME—TRAIN WARNING SIGNALS—STATUTES—EVIDENCE OF COMPLIANCE.

Positive testimony of members of train crew that bell was ringing and train whistle was blown as required by statute will be accepted as determinative as to whether statute was being complied with, where plaintiff's negative testimony that the bell and whistle were not sounded related to time when train was so far from crossing that statute did not apply and when sounds were required to be made the windows in her car were closed and she was not in a position to hear the signals if given (CL 1948, § 466.13).

7. SAME—TRAIN WARNING SIGNALS—NEGATIVE TESTIMONY—QUESTION FOR JURY.

Negative testimony that train bell was not rung and whistle not sounded will not present an issue of fact for consideration of jury unless person giving the negative testimony was in a position to hear the signals, if given, and was paying attention when the signals were claimed to have been given.

8. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DISCRETION OF COURT —SHOWING AS TO DILIGENCE.

Denial of new trial because of alleged newly-discovered evidence that there was no sound of train whistle before train reached crossing at which collision occurred was not an abuse of discretion, where there was no showing that plaintiff could not, with reasonable diligence have discovered the evidence and produced it at the trial.

9. SAME—NEWLY-DISCOVERED EVIDENCE—DILIGENCE.

It is not error to deny a motion for a new trial on the ground of newly-discovered evidence in the absence of a showing that such evidence could not have been discovered timely by exercise of reasonable diligence.

10. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—PASSENGERS.
> Passenger in an automobile with which defendant's train collided at a grade crossing, *held*, guilty of contributory negligence, where she assumed duty of looking out for approaching train and failed to see it.

Appeal from Cass; Mosier (Carl D.), J. Submitted June 11, 1952. (Docket No. 71, Calendar No. 45,525.) Decided October 6, 1952.

Case by Ethel Buchthal against New York Central Railroad Company for damages for injuries sustained at a railroad crossing accident. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Mitts & Smith* and *James & Hoff*, for plaintiff.

*Harvey & Fisher* and *George H. Wyatt* (*Patrick E. Hackett*, of counsel), for defendant.

BUTZEL, J. On April 2, 1949, plaintiff Ethel Buchthal was seated next to her husband on the front seat of an automobile driven by him on a bright clear day. It was proceeding east along a road in Cass county, popularly known as Peavine road or Swank road. They reached an intersection of the double track right-of-way of defendant New York Central Railroad Company, known as Swank's crossing, located between Niles and Dowagiac, Michigan, and about 2 miles west of Dowagiac. Peavine road is a narrow gravel or dirt highway, not a trunk line and was used for the convenience of the residents of the rural district. The right-of-way of the railroad was partly obscured by numerous trees to the right of the road but the approach to the railroad crossing was indicated by 2 warning signs placed along the road. Plaintiff and her husband had lived in that vicinity at one time and were familiar with the crossing. She

does not claim that she did not know of its existence.

Plaintiff's husband stopped the car at a point some 12 or 15 feet from the closest rail to look and listen for a possible train. At this point the car had passed out of the wooded area and beyond the fenced-in boundary of the right-of-way. The visibility was very good, notwithstanding the fact that the sun was shining from the southwest. Plaintiff testified that she could see beyond the semaphore signal posts which were 2,546 feet distant from the intersection. The testimony showed that the railroad track west of the crossing proceeded in a straight line for several miles and there was a very slight upgrade starting 3,700 feet from the crossing. Also, there was a slight upgrade of approximately 5% on Swank road at the crossing. Several witnesses testified as to ordinary conditions of visibility at the crossing but all conceded that the semaphore signal was ordinarily visible from a point some 10 or 15 feet beyond the right-of-way, notwithstanding alleged bushes and shrubbery which are not shown in exhibits verified by plaintiff.

When the driver stopped the car both he and plaintiff lowered their respective windows on each side and made observations by looking up the track and listening for warning bells or whistles. After seeing and hearing nothing, according to her testimony, they raised the windows and proceeded across the tracks without further observations and drove in first gear at approximately 2 miles per hour, possibly at 3 miles per hour, the distance between the outside rails of the double tracks being 21-1/2 feet. The car was almost entirely across the further south side rail when its right rear corner was struck by the Wolverine, a regularly scheduled fast passenger train run by defendant. Plaintiff testified that she heard nothing until she felt the impact of the train as it struck the car. Plaintiff's husband was killed.

The sole question is plaintiff's right to recover for damages to herself.

The engineer testified that he was proceeding at a speed of 80 miles an hour as he approached the crossing. That is the speed permitted by the company rules for the particular crossing, which was the last crossing west of Dowagiac. Plaintiff, however, contends that the speed was greater. The engineer testified that he blew the whistle the prescribed number of times as he reached the whistle post, which is located 1,327 feet before the crossing. The fireman and the road foreman corroborated this testimony. They also testified that the bell was sounding continuously as they approached the crossing and that the headlight was burning. The engineer and fireman testified that they were observing the tracks for possible obstructions and although visibility was excellent, the sun being behind them, they did not see the car until after the impact. Plaintiff emphasizes that the engineer and the fireman were engaged in conversation but the record indicates that the conversation took place after the impact and not before.

Plaintiff testified that she was 55 years of age at the time of the accident, had had extensive driving experience, had good vision and good hearing; that she was in the habit of making observations for danger and warning her husband when necessary. From her own testimony, she was alert, watching and listening for oncoming trains at the time. The case presents a peculiar situation. Plaintiff must have known from her experience that very fast passenger trains use the right-of-way and on a bright clear day the car was driven at from 2 to 3 miles per hour over the railroad right-of-way when the oncoming train could have been seen by her at least 2,546 feet from the intersection.

Attorneys for plaintiff urge that the question of whether the train was going at such an excessive rate

of speed so as to constitute negligence should have gone to the jury. They conceded that the testimony of the engineer is binding insofar as it is not contradicted. His testimony was positive that he was proceeding at 80 miles an hour as shown by the speedometer. Plaintiff testified she did not see the approaching train, and that when she last looked up the track she could see as far as the semaphore, 2,546 feet distant, and saw no train. She states that the automobile had come to a full stop when she last looked, it was then put into first speed and it proceeded at 2 miles, possibly 3 miles, an hour across the tracks until hit. She now tries to prove that by mathematical calculation at 80 miles an hour, the train could go only 2,115 feet in 18 seconds (the time elapsing between her last observation and seeing no train at or past the semaphore and the time of the collision), that, therefore, the train must have speeded at 90 or 100 miles an hour to also cross the 431 feet of additional distance.

The rules of the railroad, not a statute, limited the speed of the train to 80 miles an hour at that particular crossing. As a rule it would not be negligence for a train to speed at a rapid rate through open rural country. Plaintiff partly relies on *Hudson* v. *Grand Trunk Western R. Co.*, 227 Mich 1 (23 NCCA 682); *Morgan* v. *Detroit, Jackson & Chicago Railroad*, 234 Mich 497. Neither of these cases is in point as the accidents complained of took place at village crossings. In *Mulvaney* v. *New York Central R. Co.*, 233 Mich 350, we held that it was proper to take the issue from the jury and that as a matter of law no negligence existed when a person 20 feet from the track could see up the track for some 1/4 to 1/2 mile and where the train was running through sparsely settled country, the crossing being 2 and 9 miles respectively from the nearest towns. The highway in the *Mulvaney Case,* like that here, was not part of

a trunk line system. The train in that case was running at 55 miles per hour. We held that the general rule is that when running through open country the speed of trains is not limited. We cited *Robinson* v. *Flint & P. M. R. Co.*, 79 Mich 323 (19 Am St Rep 174), an early case, where we held that a speed of 60 miles an hour was not evidence of negligence. In *Shufelt* v. *Flint, P. M. R. Co.* (1893), 96 Mich 327, at 329, we said:

"Trains are not limited in the rate of speed they may run in the country, and across the public highways, where travel is limited."

See, also, *Robins* v. *Pitcairn,* 124 F2d 734. It is generally known that in the years which have elapsed since the *Shufelt* and *Robins* decisions, the speed of trains has greatly increased. It must be borne in mind that the Wolverine was proceeding through a rural section in broad daylight. Inasmuch as there is no law that prohibits a train from going at high speed in sparsely settled open country, we hold that there was no negligence shown because of speed.

Plaintiff contends that under the admitted conditions of good visibility the train crew, particularly the fireman and the engineer, charged with the duty of observing persons lawfully crossing the tracks and of maintaining a reasonable lookout, should have stopped the train when the car became visible. There was no duty upon the train crew to slow down the train or stop, even if they had seen the car. In *Piskorowski* v. *Detroit, G. H. & M. R. Co.,* 121 Mich 498 (80 Am St Rep 518), we held that a hand-car crew was not negligent as to a pedestrian unless they realized that the traveler would not stop and the crew have a right to assume that he will stop. We have held that at a country crossing there is no reason to slacken speed unless danger is apparent. See *Tucker* v. *Chicago & Grand Trunk R. Co.,* 122 Mich 149;

*Knickerbocker* v. *Detroit, G. H. & M. R. Co.,* 167
Mich 596; *Rushford-Surine* v. *Grand Trunk R. Co.,*
239 Mich 19; *Tomes* v. *Detroit, T. & I. R. Co.,* 240
Mich 133.  It is obvious that, under plaintiff's own
testimony, had the train crew realized that the mo-
torist intended to continue across the tracks it would
have been too late to prevent the accident.  Whether
they made an actual observation becomes immaterial.

Under CL 1948, § 466.13 (Stat Ann § 22.272), the
railroad must give at least 2 whistle signals at least
40 rods before a crossing is reached, together with a
continuous ringing of the bell from that point to the
crossing.  Plaintiff's own testimony is as follows:

"My best estimate is we were possibly about 12 or
15 feet from the rail closest to us at that time.  As
near as I can judge we proceeded on the track at
about 2 miles an hour.  After we once started up it
was clear in my mind no train was coming.  We went
across, that's all.  No use looking any further.

"I lowered the window in the first place to listen
and look so I could hear, that was the purpose in
lowering the window.  *You can't hear through it;* I
don't suppose after I raised the window I was able
to hear so well.  No doubt when I took my last look
I could see well over 40 rods, and I didn't see a train
within 40 rods."  (Italics ours.)

The road foreman, fireman, and the engineer testi-
fied that the bell and the whistle were sounded in
accordance with the statute but plaintiff testified that
she did not hear anything until the impact.  No other
witness testified.  Plaintiff contends that her testi-
mony raised an issue for the jury as to whether the
bell and whistle had been properly sounded.  Plain-
tiff, however, admitted with the window closed she
could not hear, or, at least as well, the signals after
the car got under way and while it traversed not only
the 12 or 15 feet but also most of the 21-1/2 feet over
the 2 sets of tracks.  If her observation as to distance

was correct, she looked before the train had reached the whistling post, at which time there was no duty to sound the whistle. Thereafter she had closed the car window and was not in a position to hear the signals, or at least hear them as well. The testimony that a witness did not hear signals cannot be considered unless it is shown affirmatively that the witness was in a position to hear signals if given and that she was paying attention when it is claimed the signals were being given. See, to that effect, *Shufelt* v. *Flint & P. M. R. Co.*, 96 Mich 327; *Lambert* v. *Minneapolis, St. P. & S. S. M. R. Co.*, 209 Mich 107; *Mulvaney* v. *New York Central R. Co.*, supra. In *Burt* v. *Detroit, G. H. & M. R. Co.*, 262 Mich 204, it was held that in an action brought by a boy who was struck by a train while crossing the tracks, his purely negative testimony that he heard no bell ring as against positive testimony that it was ringing, raised no issue of fact. Similarly here, plaintiff's testimony constitutes negative testimony only and the positive testimony of employees of defendant will be accepted as determinative.

Plaintiff claims error because a motion for new trial for newly-discovered evidence was denied. In an affidavit accompanying the motion, one Junior Coyle testified that while on a farm about a half mile away from the crossing, he heard the noise of the impact but no sound of a whistle preceding it; that he was listening for a whistle and would have heard it if it had been blown. Plaintiff filed an affidavit that she had not been aware of such testimony until after the trial. We do not believe that the court abused its discretion in denying motion for a new trial. There was no showing that plaintiff could not, with reasonable diligence, have discovered such evidence and produced it at the trial. Without such showing, it was not error to deny a new trial. See

*Grossman* v. *Langer,* 269 Mich 506; *Davidson* v. *City of Detroit,* 307 Mich 420.

We find that no negligence on the part of the defendant was shown. In the case of *Bricker* v. *Green,* 313 Mich 218 (163 ALR 697), we held that ordinarily the contributory negligence of the traveler is not imputed to the passenger. In the instant case it was claimed that plaintiff was contributorily negligent inasmuch as she was also, according to her own testimony, accustomed to watch and warn her husband while he was driving and she did assume such duty to look out for any approaching train. Under the facts of this case, plaintiff was unquestionably guilty of contributory negligence. However, we need not enlarge on this point as there was no negligence on the part of the defendant.

Judgment for defendant affirmed, with costs.

DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

The late Chief Justice NORTH did not sit.