LEMAN *v.* GRAND TRUNK WESTERN RAILROAD
COMPANY.

1. RAILROADS—AUTOMOBILES—GRADE CROSSING.
    Motorist *held,* to have had right-of-way at grade crossing of rail-
    road in open flat country, where defendant's slowly-moving
    diesel engine was approaching on irregularly used spur track.

2. SAME—AUTOMOBILES—NEGLIGENCE—PROXIMATE CAUSE—EVIDENCE.
    Evidence presented in action by passenger of northbound auto-
    mobile against railroad company for injuries sustained when
    injured at grade crossing in midafternoon in summer by slowly
    moving westbound diesel engine *held,* sufficient to sustain find-
    ings of jury that both the railroad and plaintiff's driver were
    guilty of causal negligence, there being no question of contribu-
    tory negligence of the plaintiff passenger involved.

    CARR, C.J., and DETHMERS and KELLY, JJ., dissenting.

Appeal from Macomb; Noe (Alton H.), J.   Sub-
mitted April 2, 1963.   (Calendar No. 15, Docket No.
49,168.)   Decided July 17, 1963.

Case by Olive Leman against Grand Trunk West-
ern Railroad Company, a Michigan corporation, for
personal injuries sustained in grade crossing colli-
sion.   Judgment for defendant *non obstante vere-
dicto.*   Plaintiff appeals.   Reversed and remanded
for entry of judgment on the verdict.

*Starkey & Gentz (William A. Gentz,* of counsel),
for plaintiff.

*Earl C. Opperthauser* and *Matthews, Nank &
Spier,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[2] 8 Am Jur 2d, Automobiles and Highway Traffic § 531.

Kelly, J. (*dissenting*). Plaintiff, a passenger in an automobile driven by her husband, suffered injury as the result of a collision between the automobile in which she was riding and a diesel switch engine (without cars attached) owned and operated by defendant railroad company.

Suits were instituted by both plaintiff wife and her husband, claiming defendant (1) negligently propelled the switch engine onto the highway knowing the operator "could not see oncoming traffic from the south"; (2) propelled "its diesel switch engine at a high, dangerous and unlawful rate of speed"; and (3) failed "to ring the engine bell or to sound the locomotive whistle."

. A jury answered special questions presented by the court, finding that plaintiff's husband, the driver of the automobile, was guilty of negligence which was a proximate cause of the accident; that the railroad was not guilty of negligence in failing to give a reasonable warning of the train's approach, but defendant railroad was guilty of negligence in failing to make a reasonable observation of the automobile and that said negligence was a proximate cause of the accident.

The jury verdict of no cause of action for plaintiff's husband and a $7,000 verdict for plaintiff wife resulted in the court granting defendant's motion for judgment notwithstanding the verdict as to Olive Leman. Plaintiff wife appeals, but her husband does not.

The accident occurred June 29, 1956, about 2:15 p.m. on the Edsel Ford highway, a short distance east of Mt. Clemens, at a point where a spur track owned by the United States government connects Selfridge Field with defendant's main track line, and crosses the highway about 1,000 feet west of the gates of the field at a 90-degree angle.

The weather was clear and bright, the road was dry, and traffic was light.

Plaintiff's vehicle was proceeding north and the diesel engine was proceeding west.

Both plaintiff and her husband were drivers of automobiles and both were familiar with the crossing, as they testified they crossed it as much as twice a day for a number of years.

The claim in plaintiff's declaration that defendant propelled "its diesel switch engine at a high, dangerous and unlawful rate of speed" was completely repudiated by plaintiff-husband-driver's testimony that the engine "was hardly moving at all" as it approached the highway crossing, and plaintiff's statement that "I imagine if anybody could walk fast he could keep up with it."

Plaintiff's claim in her declaration that defendant negligently failed "to ring the engine bell or to sound the locomotive whistle" was eliminated from consideration by the testimony of 3 residents of the neighborhood who testified they heard the train bell ringing and the blasts from the train whistle, thus corroborating the train crew's testimony that from the time plaintiff's vehicle was from 600 to 800 feet from the crossing and defendant's switch engine 200 feet from the same crossing, the bell was ringing and the whistle sounding.

Three witnesses testified in re defendant's observation, or lack of observation, namely, plaintiff's husband, plaintiff, and defendant's engineer.

Plaintiff's husband testified that between Mt. Clemens and Joy road, which was about 600 feet from the railroad crossing, he was driving at about 65 miles per hour; that as he crossed Joy road boulevard he reduced the speed of his car to about 50 miles per hour; that when he was about 250 feet from the crossing he heard the train whistle and

he saw the train; that he applied his brakes but skidded into the rear end of the locomotive.

Plaintiff's husband intended to swing to the left of the train as the train was going so slowly, as is indicated by the following questions and answers:

"*Q.* And what would you say concerning the speed of that train when you first observed it?

"*A.* Well, it was hardly moving at all.

"*Mr. Nank* (defendant's attorney): Pardon?

"*A.* It wasn't hardly moving at all.

"*Q.* (By Mr. Gentz, continuing): Well, after having observed this, I believe you said, you threw your arm in front of your wife, and what else did you do, if anything?

"*A.* Well, I believe I did try to swing a little to the left on account of the train was going too slow, I thought maybe I could miss him, but I just about—

"*Q.* I see. What, if anything, did you do to attempt to stop your car?

"*A.* Put my brakes in."

Plaintiff testified she heard "one toot" and saw the train proceeding slowly 60 to 65 feet from the edge of the highway and that she could see a man in the window near the rear portion of the engine "looking right at us"; that that was the last thing she remembered.

Defendant's engineer was called under the statute.[1] He testified that when he came around a bend in the track and was 200 feet from the crossing, with his engine traveling about 10 miles per hour, he saw plaintiff's car approaching at about Joy boulevard, which would be 600 feet away; that plaintiff's car was at that time traveling about 60 miles per hour; that he immediately slowed his diesel down to 5 to 6 miles per hour and commenced blowing the whistle and continued blowing the whistle right up to the

---

[1] See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

edge of the highway; that he observed plaintiff's driver slow his car to about 35 miles per hour and, concluding that he had his automobile under control and that all was clear, he (the engineer) proceeded to cross; that he was crossing and was over the center line when plaintiff's car struck the diesel near the rear end, near the cab, which would be left of the center line of the highway and plaintiff's car was in the southbound lane of traffic.

The sheriff testified that he measured the skid marks of plaintiff's car and they were 130 feet long.

Defendant's conductor and brakeman testified he was in the cab where he did not see the approaching car, but he corroborated the engineer's testimony in regard to the speed of the train, the blowing of the whistle, the ringing of the bell, and the position of the vehicles after the accident.

Appellant contends the evidence proved defendant's negligence because:

"Between the time Leman first applied his brakes (150 feet from the crossing) and when the train reached a point 10–15 feet from the edge of the pavement, the train employees had more than ample time to stop the engine.

"The obvious inference from the testimony is that Hoffman (engineer) paid no further attention to the Leman vehicle after it reached a point 150 feet south of the crossing.

"Certainly it must have appeared to a reasonably prudent train employee that 'Danger was imminent' somewhere between the time when Leman first started to skid and the collision itself.

"Had the last observation of Hoffman been something more than a glance he could not help but have seen that 'Danger was imminent and apparent', and at that point (15 feet from the edge of pavement) he had time to stop the train and avoid the accident; a careful review of the record seems to establish without doubt, that a serious question of fact of de-

fendant's negligence was raised by the testimony produced by the plaintiff. Certainly the minds of reasonable men might differ as to whether Hoffman's observations and conduct were reasonable under all the facts and circumstances surrounding the collision."

The fact that the operator of the diesel saw the automobile approaching and did not stop did not make him guilty of negligence, nor did the fact that he failed to gain complete control of the train when he observed the car approaching make him guilty of negligence.[2] The operator of the diesel was under no obligation to check or stop his train until there was something manifest that would indicate to him that the operator of the automobile was about to drive his automobile in front of the train, regardless of the imminent danger.[3] The operator of a train has no reason to slacken the speed of the train unless the danger is apparent; he has a right to assume that the operator of the automobile would stop, and it does not become negligence unless a reasonable man would have realized that the traveler would not, nor could not stop.[4]

Appellant quotes the following from 44 Am Jur, Railroads, § 509, p 749:

"Due care generally does not require the engineer to stop the train (when he sees an auto approaching the crossing), but he may act on the supposition that the traveler will stop before reaching the track. If, however, the traveler continues his course, the engineer must not rest upon this supposition so long as to allow his engine to reach the point where it will become impossible for him to control his train * * * in time to prevent injury to the traveler. When it is apparent, or when in the exercise of reasonable

[2] *Knickerbocker* v. *Detroit, G. H. & M. R. Co.*, 167 Mich 596, 604.
[3] *Tomes* v. *Detroit, T. & I. R. Co.*, 240 Mich 133.
[4] *Buchthal* v. *New York Central R. Co.*, 334 Mich 556.

diligence commensurate with the surroundings it should be apparent, to the company that a person on its track or about to get on its track is unaware of his danger or cannot get out of the way, it becomes the duty of the company to use such precautions, by warnings, applying brakes, or otherwise, as may be reasonably necessary to avoid injury to him."

The evidence does not justify a conclusion that the exercise of "reasonable diligence commensurate with the surroundings" should have made it apparent to defendant that it should have operated the diesel differently than it was operated during the brief period separating the time "when Leman first started to skid and the collision itself."

Appellant does not point out where "danger was imminent" but merely states, " 'Danger was imminent' somewhere between the time when Leman first started to skid and the collision itself."

We do not agree with appellant's theory that the operator of defendant's locomotive was guilty of negligence because "instead of watching the plaintiff's vehicle continuously, after his first observation," he discontinued observing the automobile.

The evidence justifies the conclusion that the automobile and diesel operators shared the belief that the diesel could cross the highway without collision with the automobile and that this belief continued until a time when it was impossible to avoid a collision.

Upon the facts presented the operator of the diesel could not have sensed danger until it was too late to avoid collision, and, hence, there was nothing to go to the jury. *Dalton* v. *Grand Trunk W. R. Co.,* 350 Mich 479.

Plaintiff failed to prove defendant's negligence. The court did not err in granting defendant's motion for judgment notwithstanding the verdict.

The judgment should be affirmed. Costs to defendant.

CARR, C. J., and DETHMERS, J., concurred with KELLY, J.

BLACK, J. Mr. Justice KELLY cites *Dalton v. Grand Trunk W. R. Co.,* 350 Mich 479, in support of his conclusion that "the operator of the diesel could not have sensed danger until it was too late to avoid collision." I reply, as did Mr. Justice CARR for the Court in *Sabo v. New York Central R. Co.,* 365 Mich 231, 234, that "The situation here is not analogous to that involved in *Dalton v. Grand Trunk W. R. Co.,* 350 Mich 479, to which counsel have called attention."

Indeed it is not. In *Dalton* the collision of the automobile with the train occurred at an essentially blind country road crossing of Grand Trunk's internationally operated main line tracks. The automobile was struck by one of the railroad's through passenger trains, speeding eastward from Durand, and the engineer obviously could not have stopped the train in time to avoid the Dalton disaster. In this case the crossing of a through trunk line highway, by defendant's irregularly used spur track, was in open flat country with view of motorist and engineer quite unobstructed. The so-called right-of-way became, on view necessarily favorable to plaintiff-appellant, the reverse of that which was shown in *Dalton,* and defendant's engineer seems to have acted initially upon such assumption. The extremely slow approach of the locomotive to the pavement of the expressway so indicates.* Finally, no train was involved in the collision of the Leman car with defendant's locomotive. The latter was

---

* Mr. Leman said the locomotive "was hardly moving at all." The engineer estimated its speed, immediately before impact, to be between 5 and 6 miles per hour.

proceeding with no cars attached, and it consisted of a single unit of diesel power.

Noting with emphasis that we review only the grant of a motion for judgment notwithstanding the jury's verdict for plaintiff-appellant, and making sure that we are understood as speaking in the exclusive text of favorable view, the undersigned agree fully with Justice KELLY's summation of what this record presents:

"The evidence justifies the conclusion that the automobile and diesel operators shared the belief that the diesel could cross the highway without collision with the automobile and that this belief continued until a time when it was impossible to avoid a collision."

Such shared belief did not, however, acquit either the engineer or the automobile driver as a matter of law.   If it did, few intersectional collision cases would get before juries.   Instead, that shared belief and its result should be likened to the not unknown game of bluffing the other motorist into grant of first passage; a game which does not work out so well when both bluffers continue until it is too late to avoid a collision.   All of which recalls what has been before this Court many times since advent of the automobile; referring to those open country intersectional collision cases where each driver, perceiving well in advance the approach of the other, keeps on toward the ultimate point of tie with each erroneously expecting the other to pull up.   See *e.g. Geeck* v. *Luckenbill,* 215 Mich 288, 293; *Smith* v. *Ormiston,* 242 Mich 600, 603; and *Grodi* v. *Mierow,* 244 Mich 511, 514, all repeating that:

"It seems incredible that a collision could have occurred without negligence on the part of both drivers."

Whether the engineer, as he moved the locomotive toward the pavement with timely knowledge that the Leman car was approaching—on that same pavement—at trunk line speed, should have stopped and accorded the car initial passage, was a question for the jury rather than the trial judge. In short, the proof fully justified the jury's implicit finding that each driver—one a motorist and the other an engineer—negligently, causally and mistakenly figured the other would stop and accord his vehicle the first right of passage. It follows that there was an ample sufficiency of evidence upon which the jury could find, as it did,* that the engineer and the automobile driver were causally negligent.

I would reverse and remand for entry of judgment upon the verdict of the jury, noting to avoid possible misunderstanding that no question of contributory negligence on the part of the appellant automobile passenger is or could be involved (*Yarabek* v. *Brown,* 357 Mich 120; *Spencer* v. *City of Midland,* 358 Mich 346). Appellant should have costs.

KAVANAGH, SOURIS, SMITH, and O'HARA, JJ., concurred with BLACK J.

---

* The form of the special questions propounded for jury answer was not and is not now questioned. Here are the questions and the jury's answers:

"1. Was Henry Leman guilty of any negligence which was a proximate cause or contributed in any way to the accident?"
  Jury's answer—"Yes."

"2. Was the railroad guilty of negligence in failing to give a reasonable warning of the train's approach?"
  Jury's answer—"No."

"3. If your answer to question 2 above is yes, was such negligence a proximate cause of the accident?"
  Jury's answer—"No."

"4. Was the railroad guilty of negligence in failing to make a reasonable observation of the Leman automobile?"
  Jury's answer "Yes."

"5. If your answer to question 4 above is yes, was such negligence a proximate cause of the accident?"
  Jury's answer "Yes."