WINCHELL v DETROIT & MACKINAC RAILWAY COMPANY

Docket No. 45280. Submitted June 4, 1980, at Lansing.—Decided
December 15, 1980. Leave to appeal applied for.

Molly Winchell was injured and her infant daughter, Karen S.
Winchell, was killed when the automobile in which they were
riding collided with a moving Detroit & Mackinac Railway
Company train at a marked crossing in Iosco County. Molly
Winchell, individually, and as administratrix of the estate of
Karen S. Winchell, filed suit against the Detroit & Mackinac
Railway Company in Iosco Circuit Court alleging that the
defendant's negligence in the train engineer's failure to sound
a proper warning with the engine's whistle as the train ap-
proached the crossing caused the accident.

The defendant, thereupon, filed a third-party complaint
against the Iosco County Road Commission and Elmer Winc-
hell, the driver of the automobile, alleging that their negligence
was the proximate cause of the collision. The road commission
was subsequently dismissed as a party defendant. The jury
returned a verdict of no cause of action. The plaintiff moved for
a new trial. Allan C. Miller, J., denied the motion for a new
trial. The plaintiff appeals alleging that: (1) the trial court
erred in refusing to give her requested instruction on the
doctrine of comparative negligence, and 2) the trial court erred
in its instructions on the duty of a railroad to reduce its speed,
on the assured clear distance rule, and the stop, look and listen
rule. *Held:*

1. The trial court instructed the jury that the plaintiff and

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Negligence § 426.
Modern development of comparative negligence doctrine having
application to negligence actions generally. 78 ALR3d 421.
[2] 58 Am Jur 2d, Negligence § 473.
[3] 65 Am Jur 2d, Railroads § 442.
[4] 7A Am Jur 2d, Automobiles and Highway Traffic § 420.
Sudden emergency as exception to rule requiring motorist to main-
tain ability to stop within assured clear distance ahead. 75
ALR3d 327.
[5] 57 Am Jur 2d, Negligence § 239.
[6] 75 Am Jur 2d, Trial § 12.

the plaintiff's decedent were free from any negligence as a matter of law. The defendant never claimed that those parties were negligent but did assert that the negligence of the driver of the car caused the accident. The driver's negligence could not be imputed to the other occupants of the car, therefore, the comparative negligence doctrine does not apply.

2. The trial court did not err in instructing the jury that under Michigan law there was no duty for the railroad to reduce its speed until it realized that a car would not stop.

3. The "sudden emergency" doctrine applies since the evidence indicated that the driver was unaware of the presence of the defendant's train until it suddenly appeared from behind bushes and trees near the crossing. The assured clear distance rule does not apply and the instruction on assured clear distance should not have been given.

4. The Michigan statute requiring a motorist to stop at the railroad tracks when some type of warning has been given or an approaching train is visible is not a codification of the abandoned common law rule that automobile drivers are guilty of contributory negligence as a matter of law in railroad crossing accident cases if they do not stop, look and listen before crossing the track. Violation of a statute constitutes negligence per se although whether or not the violation was the proximate cause of the accident is a question of fact for the jury. The instruction in the present case informed the jury that the statute was applicable only if the jury found that the train whistle was properly sounded. The giving of this instruction did not constitute reversible error.

5. The erroneous instruction on the assured clear distance statute does not constitute reversible error because the jury never reached the question of Elmer Winchell's negligence.

Affirmed.

M. J. KELLY, J., concurred. He would have preferred separate trials for the principal complaint and the third-party complaint. The railroad could not effectively try the issue of the negligence of the driver of the car against an express instruction that the plaintiff was free from any negligence as a matter of law. But this issue was not raised on appeal. He would not require the trial court to exercise that discretion *sua sponte* and therefore, he concurred. He noted that, had the jury reached a verdict against the defendant and then against the third-party defendant, a strong argument could be made for applying the rule permitting partial indemnity from tortfeasors on a comparative fault basis.

OPINION OF THE COURT

1. NEGLIGENCE — COMPARATIVE NEGLIGENCE — CONTRIBUTORY NEGLIGENCE.

The doctrine of comparative negligence was adopted in Michigan to eliminate the harshness of the contributory negligence rule and applies where both the plaintiff and defendant were negligent.

2. NEGLIGENCE — AUTOMOBILE DRIVER'S NEGLIGENCE — PASSENGERS.

An automobile driver's negligence cannot be imputed to other occupants of the automobile which he was driving in a suit based on an automobile accident.

3. RAILROADS — DUTY TO REDUCE SPEED.

There is no duty for a railroad train to reduce its speed because of any approaching automobile at a crossing until the driver realizes that the approaching car will not stop.

4. AUTOMOBILES — NEGLIGENCE — SUDDEN EMERGENCY DOCTRINE — ASSURED CLEAR DISTANCE.

The sudden emergency doctrine provides that the assured clear distance rule does not apply where an object suddenly intersects the assured clear distance of the motorist.

5. NEGLIGENCE — NEGLIGENCE PER SE — VIOLATION OF STATUTE.

Violation of a statute constitutes negligence per se although whether or not the violation was the proximate cause of an accident is a question of fact for the jury.

CONCURRENCE BY M. J. KELLY, J.

6. TRIAL — NEGLIGENCE — SIMULTANEOUS TRIAL — PREJUDICE — THIRD-PARTY COMPLAINT.

*Generally a trial should not be held before the same jury of a principal complaint and a third-party complaint under circumstances where a plaintiff injured automobile passenger sues·a defendant railroad for negligence, and the defendant railroad sues the driver of the automobile for negligence and the jury is given an express instruction that the plaintiff was free from negligence as a matter of law.*

*Baker, Baker & Selby,* for plaintiff.

*Martin, Bacon & Martin, P.C.,* for defendant.

Before: DANHOF, C.J., and M. J. KELLY and G. R. CORSIGLIA,* JJ.

DANHOF, C.J. On October 9, 1973, plaintiff, Molly Winchell, and her infant daughter, decedent Karen Sue Winchell, were riding as passengers in a car being driven by plaintiff's husband, third-party defendant Elmer Winchell. The decedent was killed and plaintiff injured when the car collided with a moving Detroit & Mackinac Railway Company train at a marked crossing in Iosco County. The accident occurred at approximately 6:30 p.m. On December 4, 1975, plaintiff filed a complaint alleging that the defendant railroad's negligence caused the accident. Defendant then filed a third-party complaint against defendants Iosco County Road Commission and Elmer Winchell alleging that their negligence was the proximate cause of the collision. The Road Commission was later dismissed as a party defendant.

Plaintiff specifically claimed that the train engineer failed to sound a proper warning with the engine's whistle as the train approached the crossing. At the trial, which began on October 17, 1978, conflicting testimony was presented on the question of whether and when the whistle was sounded. On October 20, 1978, the jury returned a verdict of no cause of action. Plaintiff's motion for a new trial was denied on March 14, 1979, and she now appeals as of right.

Plaintiff's first argument on appeal is that the trial court erred by refusing to give her requested instruction on the doctrine of comparative negligence. That doctrine was adopted in Michigan to eliminate the harshness of the contributory negligence rule. *Placek v City of Sterling Heights,* 405

* Circuit judge, sitting on the Court of Appeals by assignment.

Mich 638; 275 NW2d 511 (1979). It applies where both the plaintiff and defendant were negligent. In the present case, the court instructed the jury that plaintiff and plaintiff's decedent were free from any negligence as a matter of law. Defendant had never claimed that they were negligent, but did assert that the negligence of Elmer Winchell, who was driving the car, caused the accident. His negligence could not be imputed to the other occupants of the car; therefore, the comparative negligence doctrine did not apply. *Bricker v Green,* 313 Mich 218; 21 NW2d 105 (1946), *Sherman v Korff,* 353 Mich 387; 91 NW2d 485 (1958).

Next, plaintiff claims the trial court erred by instructing the jury that "[u]nder the Michigan law, there's no duty for a railroad to reduce its speed until it realizes that a car won't stop". This instruction was correct according to *Buchhal v New York Central R Co,* 334 Mich 556; 55 NW2d 92 (1952).

Plaintiff argues that the trial court improperly instructed the jury, over objection, on the assured clear distance rule and the stop, look and listen rule. The following instruction was given based on the assured clear distance statute, MCL 257.627a; MSA 9.2327a:

"I further charge you that Third-Party Defendant, Elmer Winchell, had a duty to operate the motor vehicle in a careful, prudent and lawful manner, to have the motor vehicle under safe control and operate the same at a safe and reasonable rate of speed and in such manner as to avoid collision with other persons and vehicles lawfully upon such highway under the conditions then and there existing in accordance with the statutes of the State of Michigan.

"Now, I've mentioned certain statutes. We have one called the Assured Clear Distance, and that was just commented upon in that last reading. Any person driv-

ing a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper having due regard to the traffic surface and width of the highway and of any other condition then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

Plaintiff relies on the "sudden emergency doctrine", which holds that the assured clear distance rule does not apply where an object suddenly intersects the assured clear distance of the motorist. *Fisher v Grand Trunk Western R Co,* 306 Mich 95; 10 NW2d 321 (1943), *Green v Richardson,* 69 Mich App 133; 244 NW2d 385 (1976), *lv den* 397 Mich 852 (1976). In the present case, the evidence indicated that the driver was unaware of the presence of defendant's train until it suddenly appeared from behind bushes and trees near the crossing. Therefore, the statute did not apply and the instruction should not have been given.

Plaintiff also challenges the following instruction, which was based on MCL 257.667(a); MSA 9.2367(a):[1]

[1] "Sec. 667. (a) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the following circumstances the driver shall stop within 50 feet but not less than 15 feet from the nearest rail of the railroad, and shall not proceed until he can do so safely:

"(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train.

"(2) A crossing gate is lowered or a human flagman gives or continues to give a signal of the approach or passage of a railroad train.

"(3) A railroad train approaching within approximately 1,500 feet of the highway crossing gives a signal audible from such distance and the train, by reason of its speed or nearness to such crossing, is an immediate hazard.

"(4) An approaching railroad train is plainly visible and is in hazardous proximity to the crossing.

"(b) No person shall drive any vehicle through, around or under any crossing gate or barrier at a railroad crossing while such gate or barrier is closed or is being opened or closed."

"There's another statute that I shall read in this connection. Whenever any person driving a vehicle approaches a railroad grade crossing under any of the following circumstances the driver shall stop within 50 feet but not less than 15 feet from the nearest rail of the railroad and shall not proceed until he can do so safely. Among the circumstances listed in this statute that I find material are as follows: Number Three, a railroad train approaching within approximately 1500 feet of the highway crossing gives a signal audible from such distance, and the train by reason of its speed or nearness to such crossing is an immediate hazard. If you find, therefore, that Elmer Winchell violated this statute before or at the time of the occurrence, then, he was presumptively negligent as a matter of law, but this may be rebutted by showing of adequate excuse from all the facts and circumstances in this case, and, of course, you also in applying that statute must find that the circumstances existed that of giving the audible 1500—1500 feet of the highway crossing gives an audible signal. That's the circumstances bringing into operation that statute."

We do not believe that the cases relied on by plaintiff, *McKinney v Yelavich,* 352 Mich 687; 90 NW2d 883 (1958), and *Beasley v Grand Trunk W R Co,* 90 Mich App 576; 282 NW2d 401 (1979), are controlling. In those cases, the common law rule that automobile drivers are guilty of contributory negligence as a matter of law in railroad crossing accident cases if they do not stop, look and listen before crossing the track was criticized and abandoned. The statute involved in the present case is not a codification of that rule. It only requires that a motorist stop at the tracks when some type of warning has been given or an approaching train is visible.

Violation of a statute constitutes negligence per se, although whether or not the violation was the proximate cause of the accident is a question of

fact for the jury. *Morton v Wibright,* 31 Mich App 8; 187 NW2d 254 (1971), *Shepherd v Short,* 53 Mich App 9; 218 NW2d 416 (1974). The instruction in the present case informed the jury that the statute was applicable only if the jury found that the train whistle was properly sounded. We do not find that the giving of this instruction constituted reversible error.

The disputed instructions pertained only to the negligence of third-party defendant Elmer Winchell. The jury was instructed to consider his negligence only if it found defendant railroad liable to plaintiff. The form of the verdict and the instructions given indicate that the jury either found the railroad was not negligent or that any negligence on its part was not a proximate cause of the accident. The erroneous instruction on the assured clear distance statute does not constitute reversible error because the jury never reached the question of Elmer Winchell's negligence.

Affirmed.

G. R. CORSIGLIA, J., concurred.

M. J. KELLY, J. *(concurring).* The main difficulty I have with this case surrounds the simultaneous trial before the same jury of the principal complaint and the third-party complaint. The practical effect of defendant railroad's third-party complaint against plaintiff's husband appears to me to have gone beyond a claim for contribution. It seems arguably prejudicial that the railroad could effectively try the issue of the negligence of plaintiff's husband against an express instruction that plaintiff was free from any negligence as a matter of law. It would be extremely difficult for the jury to separate the concepts of individual liability on the part of the railroad for all compensable damages

attributable to plaintiff's injuries if the jury were at the same time convinced that the third-party defendant husband (driver) was 90% responsible (employing comparative negligence concepts) and the railroad was 10% liable. Assuming hypothetically, though, that it did, it would be required to arrive at a verdict for plaintiff in the full amount of her damages individually and as administratrix against the defendant railroad, while at the same time reaching a verdict in favor of the railroad for contribution. The unobjected to instruction as to the third-party complaint follows:

"As I indicated before, in addition to the claim of the Plaintiff, there's also the claim by the Defendant, D & M, against Elmer. This is called a third-party proceeding. Defendant railway is called a Third-Party Plaintiff. Elmer is called a Third-Party Defendant. If you find under these instructions that the Plaintiff's [sic] entitled to a verdict against the Defendant railway, then, you must determine whether or not the Third-Party Plaintiff, D & M, may recover against Third-Party Defendant Winchell. In this connection, the D & M has no burden of proof on each of the following propositions: A, that Elmer Winchell was negligent in failing to have his car under proper control as he approached a railroad crossing, in failing to keep a proper lookout and to observe the approaching train, in failing to apply his brakes and keep his car under control as he approached the crossing such that he could bring the car to a stop within the assured clear distance ahead and thus avoid a collision with the train in driving his automobile at the speed that was testified to, that the negligence of Elmer Winchell was a proximate cause of the injuries to Plaintiff. If your verdict is for the Plaintiff against the Defendant and you find that Elmer Winchell also was negligent and such negligence was a proximate cause of the Plaintiff's injuries and/or death, then, your verdict will be for the railway against Elmer Winchell for contribution, or one-half of the amount of award. If your verdict is for the Defendant railway,

then, you need not consider the third-party complaint. Even if your Defendant—your verdict is against the Defendant railway, your verdict will be for the Third-Party Defendant, Elmer Winchell, if he was not negligent, or if negligent, his negligence was not a proximate cause of the injuries, or if you find his negligence was merely ordinary negligence and you find that the railroad's negligence was gross negligence."

It appears to me that this instruction caused a dilemma which should have been resolved by separate trials under GCR 1963, 505.2. Since this issue was not raised, at least on appeal, I would not require the trial court to exercise that discretion *sua sponte* and therefore I concur in the result reached by the majority.

The majority addresses plaintiff-appellant's first argument on appeal as to the giving of a requested instruction on the doctrine of comparative negligence as though the instruction were contemplated on line between plaintiff and defendant railroad. This is not entirely clear from the record presented which is quoted as follows:

"*[The Court]:* Eleven.

"MR. BACON *[counsel for defendant railway]:* I object to that, your Honor, that she and her husband are not parties and anything that she claims her husband is not guilty of.

"MR. BAKER *[counsel for plaintiff]:* By the way, did I give you a copy of my trial brief? I cited a case there, and sometimes—did I give you a copy of my trial brief, John?

"MR. BACON: Yes.

"MR. BAKER: All right. Well, then, there's a case I've cited which directly holds he's guilty of only what the jury might call slight negligence.

"MR. BACON: We do not have comparative negligence in Michigan, your Honor.

"THE COURT: I think the Supreme Court has also

held that to get into interpretations of slight is only asking for error and confusion, and we'll not give 11 on that basis.

"MR. BAKER: I might make this suggestion to the Court. It's my understanding that there is a case on comparative negligence that is going to the Supreme Court, that is in the Supreme Court, and it'll ultimately come down, and we've prepared—and I think you—did you give it to me, or did you give it to me, Judge?

"MR. NEERING [counsel for third-party defendant Winchell]: No, I gave * * *

"MR. BAKER: (Interposing.) We have an instruction on comparative negligence, and I think the Court should give that instruction.

"THE COURT: You making that request so you have the record preserved I assume. All right, we'll consider you made the request and denied, okay, but that way you got a record on it.

"MR. BAKER: Okay. Thank you.

"THE COURT: You're making the same request, Mr. Neering?

"MR. NEERING: Yes.

"THE COURT: All right, denied."

If the requested instruction were contemplated as between defendant railroad and third-party defendant Elmer Winchell, a question of first impression would be raised in this state as to the allocation of loss between and among multiple tortfeasors. The California Supreme Court anticipated, but bypassed, such questions when it adopted the doctrine of pure comparative negligence in *Li v Yellow Cab Co,* 13 Cal 3d 804; 119 Cal Rptr 858; 532 P2d 1226 (1975). That Court later addressed the effects of its rule on cases involving multiple parties in *American Motorcycle Ass'n v Superior Court of Los Angeles County,* 20 Cal 3d 578; 146 Cal Rptr 182; 578 P2d 899 (1978). Since this is obviously dicta, discussion of the *American Motorcycle* case is uncalled for. Suffice it to say that had

the jury reached a verdict against defendant and then against third-party defendant, a strong argument could be made for applying the *American Motorcycle* rule to the instant case and thus permitting "partial indemnity from tortfeasors on a comparative fault basis".