# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

MARION v GRAND TRUNK WESTERN RAILROAD COMPANY

Docket No. 164298. Argued on application for leave to appeal October 4, 2023. Decided June 5, 2024.

Jacob Marion, a minor, through his guardian and next friend Monica Marion, brought a negligence action in the Wayne Circuit Court against Grand Trunk Western Railroad Company and two of its employees, conductor Steven Golombeski and engineer Jessie Wilson. Plaintiff brought the action after a Grand Trunk train struck and injured Jacob as he was walking down the railroad tracks while listening to music through earbuds. Both Golombeski and Wilson saw Jacob walking with his back to the train about three-quarters of a mile, or approximately two minutes, away. Wilson sounded the horn when the train was approximately 18 seconds away from Jacob, as the train approached a street crossing. Golombeski noted that Jacob did not appear to respond to the sound of the horn, and Wilson then sounded the horn in emergency mode. Wilson, however, did not apply the emergency brake until approximately one second before the train struck Jacob. Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that the collision was not caused by any negligence on their part but rather by Jacob's failure to exercise ordinary care for his own safety. The trial court, Annette J. Berry, J., granted the motion, noting that defendants had attempted to alert Jacob of the train's approach and that Jacob was old enough to understand the dangers of trains. Plaintiff appealed, and the Court of Appeals, GLEICHER, P.J., and CAVANAGH, J. (LETICA, J., concurring), reversed, holding that a train engineer has a duty to stop or slow down when a person in the train's path fails to respond to a warning signal. 341 Mich App 65 (2022). Defendants sought leave to appeal, and the Supreme Court ordered oral argument on the application, directing the parties to address whether defendants were entitled to presume that Jacob would leave the tracks before being struck by the train; whether defendants had a duty to slow or stop the train to avoid hitting Jacob; and at what point, if any, the entitlement to a presumption that a person will leave the tracks gives way to a duty to act to avoid a collision. 510 Mich 942 (2022). Subsequently, Jacob passed away, and Monica Marion was substituted as plaintiff in her capacity as personal representative of Jacob's estate.

In an opinion by Chief Justice CLEMENT, joined by Justices ZAHRA, BERNSTEIN, CAVANAGH, WELCH, and BOLDEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

When a train operator sees a person on the tracks, there is a presumption that the person will move to a place of safety. But when it becomes apparent that the person will not or cannot

get out of the way, that presumption is overcome, and the train operator has a duty to take steps to avoid a collision. Because there remained genuine issues of material fact as to whether defendants were negligent, the Court of Appeals' ruling in favor of plaintiff was affirmed and the case remanded to the trial court for further proceedings.

1. Whether summary disposition was warranted in this case turned on the scope of defendants' duty. When considering whether a duty exists, courts consider several factors, including the foreseeability of the harm, the degree of certainty of the injury, the closeness of connection between the conduct and the injury, the moral blame attached to the conduct, the policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach. Generally, landowners who should know of frequent trespassers must exercise reasonable care for the safety of trespassers when conducting dangerous activities. With regard to trespassers on railroad tracks, if a train operator sees a person on the tracks, and there is no reason to believe that the person would not heed the danger of the coming train, the train operator can presume the person will move and has no duty to take steps to avoid a collision. However, under *Lake Shore & MS R Co v Miller*, 25 Mich 274, 279-280 (1872), overruled in part on other grounds by *Bricker v Green*, 313 Mich 218 (1946), this presumption gives way to a duty to act to avoid a collision when it becomes apparent that the person will not or cannot move off the tracks. Under *Bouwmeester v Grand Rapids & I R Co*, 63 Mich 557 (1886), this duty requires the train operator to slow the train and, if necessary to preserve life or limb, come to a full stop. When exactly it becomes apparent that a person will not move off the tracks and what is a reasonable action to fulfill the duty to take steps to avoid a collision once that duty arises will depend on the particular facts of each case.

2. There was no support for the proposition that Michigan's switch from contributory to comparative negligence in *Placek v Sterling Hts*, 405 Mich 638 (1979), invalidated large swaths of prior caselaw, particularly caselaw setting out the presumption that a person will move off the tracks and establishing when that presumption gives way to a duty to act to avoid a collision. Under a contributory-negligence scheme, a plaintiff could not recover in a negligence action if their own negligence also caused the injury. Under the current comparative-negligence scheme, a plaintiff whose negligence contributed to their injury may recover against a negligent defendant; their damages award is simply reduced to reflect the extent of their own fault. Accordingly, before *Placek*, cases were often resolved without defining the full scope of the defendant's duty because they could be decided solely on the basis of plaintiff's contributory negligence, which generally served as a complete bar to recovery. However, pre-*Placek* precedents regarding the scope of a defendant's duty generally remain valid, including the principle set out in *Lake Shore* regarding when the presumption that a person will move off the tracks gives way to a duty to act to avoid a collision. While the switch to comparative negligence created distinctions that will sometimes preclude the application of pre-*Placek* caselaw, these distinctions did not relate to when the presumption that a person will move off the tracks gives way to a duty to act to avoid a collision.

3. The Court of Appeals correctly concluded that summary disposition was not warranted in this case. A reasonable juror could conclude that defendants were negligent in sounding a second horn rather than applying the emergency brake when it first became apparent that Jacob would not move, i.e., after Jacob failed to heed the initial horn blast before the crossing, and there was also a question as to whether defendants had a duty to sound the horn earlier than they initially

did. In addition, there was a remaining question of fact regarding defendants' ability to stop the train had they braked as soon as duty required. The first horn was sounded 18 to 19 seconds before the collision, but the train took 719.5 feet to stop. Whether it would have been possible to stop the train before striking Jacob might bear on what actions defendants should have taken when the duty to take steps to avoid a collision was triggered. If reasonable minds were to conclude that duty required defendants to apply the brake after Jacob failed to heed the first horn, they might also have been able to find that it was possible to stop the train in time. Given these genuine questions of material fact, defendants were not entitled to summary disposition.

Affirmed; case remanded to the trial court for further proceedings.

Justice VIVIANO, concurring, agreed with the majority's recognition of the longstanding legal presumption that a person will leave the railroad tracks when a train is approaching and that a duty to act to avoid a collision only arises when it becomes apparent to the train operator that the person will not or cannot get out of the way, and he also agreed with the majority's decision to affirm the Court of Appeals' conclusion that there was a material question of fact in this case. He wrote separately to express the view that the relevant factual questions in this case were better stated as (1) at what point it became apparent to defendants that Jacob would not get off the tracks, and (2) whether this occurred when there was still time to avoid the collision, given that it does not appear that the train would have been able to stop in time to avoid the collision at the point the majority identified as the time it first became apparent that Jacob would not move, i.e., less than 20 seconds before the collision.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED June 5, 2024

STATE OF MICHIGAN

SUPREME COURT

MONICA MARION, Personal
Representative of the ESTATE OF JACOB
MARION,

      Plaintiff-Appellee,

v                                    No. 164298

GRAND TRUNK WESTERN RAILROAD
COMPANY, STEVEN GOLOMBESKI, and
JESSIE WILSON,

      Defendants-Appellants.

BEFORE THE ENTIRE BENCH

CLEMENT, C.J.

## I. INTRODUCTION

This case presents tragic facts involving a train collision. Namely, the train operated by defendants struck Jacob Marion, a 14-year-old who was walking along the tracks and did not heed the sound of the horn. We write to clarify the duty on the part of the railroad,

specifically regarding when a presumption that a person will leave the tracks gives way to a duty on the part of the train operators to avoid a collision. As our caselaw has long recognized, the presumption that a person will leave the tracks gives way to a duty to act to avoid a collision when it becomes apparent that the person will not or cannot get out of the way. *Lake Shore & MS R Co v Miller*, 25 Mich 274, 279-280 (1872), overruled in part on other grounds by *Bricker v Green*, 313 Mich 218 (1946). Because summary disposition of plaintiff's negligence claim is not warranted at this time, we affirm the Court of Appeals' reversal of the circuit court's order granting summary disposition in favor of defendants.

## II. FACTS

The victim, Jacob Marion, was 14 years old when he was walking near the railroad tracks between his home and his high school. He had earbuds in and was listening to music. The train's conductor, Steven Golombeski, and the engineer, Jessie Wilson, saw Jacob from about three-quarters of a mile away. Jacob's back was facing the train. The train was traveling at 29 miles per hour at that time. Wilson sounded the horn as the train approached the Oak Street crossing, which was usual practice. At that point the train was 18 to 19 seconds away from Jacob. After the horn sounded but before the train was at the crossing, Golombeski said, "The kid doesn't look like he's going to move."

The train then went over the Oak Street crossing. After the crossing, Wilson also noted that the person was not responding. Wilson sounded the horn in emergency mode, i.e., with several short blasts. But Wilson did not apply the emergency brake. Jacob still did not respond to the horn. Wilson finally applied the emergency brake approximately

2

one second before the train hit Jacob.[1]  It took the train 719.5 feet to stop after the emergency brake was applied.[2]  Plaintiff suffered severe injuries as a result of the collision.  His phone and earbuds were later found near the site of the accident, still playing music.

Jacob, by his guardian and next friend, brought a negligence claim against Grand Trunk Western Railroad Company, Golombeski, and Wilson.[3]  Defendants moved for summary disposition under MCR 2.116(C)(10).  The trial court granted defendants' motion for summary disposition and later denied reconsideration.

Plaintiff appealed, and the Court of Appeals reversed in a published opinion authored by Judge GLEICHER.  Judge LETICA concurred.  Defendants then sought leave to appeal in this Court.  We ordered oral argument on the application, directing the parties to address whether:

> (1) the defendants were entitled to presume that the plaintiff would leave the tracks before being struck by the train; (2) the defendants possessed a duty to slow or stop the train to avoid a possible collision with the plaintiff; and (3) if both of the preceding questions are answered in the affirmative, at what point does the entitlement to a presumption that a person will leave the tracks give way to the duty to act to avoid a possible collision, if at all.  See *Lake Shore & MSR Co v Miller*, 25 Mich 274, 278-279 (1872), overruled on other grounds, *Bricker v Green*, 313 Mich 218 (1946).  [*Marion v Grand Trunk W R Co*, 510 Mich 942, 942-943 (2022).]

---

[1] According to plaintiff's expert, the emergency brake was applied between seven and eight tenths of a second before impact.  According to defendants' expert, the emergency brake was applied when the train was 66 feet from Jacob, which would have been about $1\frac{1}{2}$ seconds before impact.  In any case, the emergency brake was not applied until right before the collision.

[2] In defendants' supplemental brief, they said it took 31 to 32 seconds to stop the train.  However, at oral argument, counsel for defendants said it took 16.64 seconds to stop.

[3] After Jacob's death, Monica Marion, the personal representative of Jacob's estate, was substituted as the plaintiff.

3

## III. ANALYSIS

Defendants moved for summary disposition under MCR 2.116(C)(10). That subsection provides for summary disposition when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When considering a motion for summary disposition under this subsection, a court may consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. MCR 2.116(G)(5). The evidence is considered "in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. "A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010), citing *Glittenberg v Doughboy Recreational Indus (On Rehearing)*, 441 Mich 379, 398-399; 491 NW2d 208 (1992).

## A. WHEN PRESUMPTION GIVES WAY TO DUTY

To prove negligence, a plaintiff must show that the defendant owed them a duty, that the defendant breached that duty, that the plaintiff suffered harm, and that the defendant's breach was the proximate cause of the plaintiff's harm. *Schultz v Consumers Power Co*, 443 Mich 445, 449; 506 NW2d 175 (1993); see also *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). Whether summary disposition is warranted in this case turns on the scope of defendants' duty. "A common-law duty of care exists when 'the relationship between the actor and the injured person gives rise to [a] legal

4

obligation on the actor's part for the benefit of the injured person.' " *Rowland v Independence Village of Oxford*, *LLC*, 509 Mich 992, 992 (2022), quoting *Moning v Alfono*, 400 Mich 425, 438-439; 254 NW2d 759 (1977) (alteration in original). When considering whether a duty exists, courts consider several factors, including " 'foreseeability of the harm, degree of certainty of the injury, closeness of connection between the conduct and the injury, moral blame attached to the conduct, policy of preventing future harm, and . . . the burdens and consequences of imposing a duty and the resulting liability for breach.' " *Valcaniant v Detroit Edison Co*, 470 Mich 82, 86; 679 NW2d 689 (2004), quoting *Buczkowski v McKay*, 441 Mich 96, 101 n 4; 490 NW2d 330 (1992) (alteration in original). The duty in a negligence action is broadly "to conform to the legal standard of reasonable conduct in the light of the apparent risk." *Moning*, 400 Mich at 443 (quotation marks and citation omitted).

In the instant case, Jacob was a trespasser on defendants' railroad track.[4] However, that does not mean that defendants owed him no duty. To the contrary, *Lyshak v Detroit*,

---

[4] 20 Mich Civ Jur, Railroads, § 64, p 646 ("Ordinarily, one who enters upon the right-of-way of a railroad company, except at an established crossing, is a trespasser or a mere licensee."), citing *Northern Assurance Co v New York Central R Co*, 271 Mich 569, 575; 260 NW 763 (1935) ("Railroad companies usually own or control their right of way, and others who enter upon the right of way of a railroad company, except at established crossings, are ordinarily trespassers. Such exclusive control of the railroad company's right of way is given to it by law as necessary for the protection and safety of the traveling public, and to enable the railroad to function efficiently in the operation of its trains."). Cf. *Newell v Detroit, GH & M R Co*, 187 Mich 697, 700-701; 153 NW 1077 (1915) ("It is the claim of the plaintiff—and testimony was offered to sustain this claim—that the right of way in question had for years been used by the public as a thoroughfare, and that therefore plaintiff's decedent was a licensee, and not a trespasser, upon the railroad right of way and tracks at the time he was killed."). Plaintiff does not dispute that Jacob was a trespasser.

351 Mich 230; 88 NW2d 596 (1957), adopted the following summary of a landowner's

duty to trespassers from the first Restatement of Torts:

> "A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety." [*Id*. at 249, quoting 2 Restatement Torts, § 334.][5]

In sum, landowners who should know of frequent trespassers must exercise reasonable care

for the safety of trespassers when conducting dangerous activities.

As to the duty of train operators toward trespassers on the railroad tracks, train

operators have a "general duty to run the train with reasonable care and watchfulness."

*Huggett v Erb*, 182 Mich 524, 536; 148 NW 805 (1914).[6] Yet, an engineer who sees a

person on the track can presume that the person will move to safety until the engineer sees

otherwise. *Lake Shore*, 25 Mich at 279, instructs:

> [I]f an engineer see[s] . . . a man, in the act of crossing the track, far enough ahead of him to have ample time, in the ordinary course of such movements, to get entirely out of the way before the approach of the engine; or if he sees a man walking along upon the track at a considerable distance ahead, and is not aware that he is deaf or insane, or from some other cause insensible of

---

[5] See also *Grand Trunk R Co v Richardson*, 91 US (1 Otto) 454, 471; 23 L Ed 356 (1875) ("[A] railroad company in the discharge of its duties, and in the exercise of its right to protect its property from injury to which it is exposed by the unlawful act or neglect of another, is bound to use ordinary care to avoid injury even to a trespasser.").

[6] See also *Broadbeck v Detroit, M & T Short Line R Co*, 195 Mich 446, 448; 161 NW 889 (1917) ("While there has been some variation in the holdings of courts as to the precise duty which a railroad company owes to trespassers and licensees, they have been nearly unanimous in holding that, when they are discovered in a place of danger, reasonable care must be exercised to avoid injuring them."), citing *Bouwmeester v Grand Rapids & I R Co*, 63 Mich 557; 30 NW 337 (1886).

the danger . . . , he has a right to rely upon the laws of nature and the ordinary course of things, and to presume that the man driving the team or walking upon the track, has the use of his senses, and will act upon the principles of common sense and the motive of self-preservation common to mankind in general; and that they will, therefore, get out of the way,—that those on the track will get off, and those approaching it will stop, in time to avoid the danger; and he, therefore, has the right to go on, without checking his speed . . . . [Italics omitted.]

Put simply, if a train operator sees a person on the track, and there is no reason to believe that the person would not heed the danger of the coming train, the train operator can presume the person will move. In that circumstance, the train operator has no duty to take steps to avoid a collision.[7] Several cases have iterated the principle that there is no duty to act to avoid a collision simply because someone is approaching or on the track.[8] This

---

[7] There is a duty to slow down and provide time to stop upon seeing an unidentified figure on the tracks. See *Keyser v Chicago & Grand Trunk R Co*, 56 Mich 559, 562; 23 NW 311 (1885) (opinion of SHERWOOD, J.) ("The occurrence was of a character to call for increased vigilance on the part of defendant's train-men in determining the character of the apparent obstruction. It should have, at least, caused the engineer to slow down the speed of his engine to such a rate that, in approaching it, he could have stopped his train, if necessary, to prevent injury before reaching the object of danger. The safety of the passengers, as well as that of the plaintiff, under all the circumstances, I think, required this to be done."); 20 Mich Civ Jur, Railroads, § 52, p 631 ("A railroad engineer is bound to slow down or stop the train if possible where people are found on the track who are apparently unaware of the danger of being run over and do not hear or notice warning signals. Similarly, the duty is the same as to an unidentifiable object a long way off on the track, or as to a light swung across the track in front of an approaching train. However, if there is no danger in sight or reasonably anticipated, the engineer is not required to check the speed of the train, or to heed a stranger's signal to stop. Accordingly, it is not negligence for an engineer to fail to slow or stop a train when a person is seen on or near the track in a position of apparent safety, because in such a situation, the engineer may assume that the person will not be negligent."). Because Jacob was not an unidentified figure but rather recognized as an apparently sensible person, this duty is inapplicable.

[8] *Wexel v Grand Rapids & I R Co*, 190 Mich 469, 477; 157 NW 15 (1916) ("It has been repeatedly held by this court that those running trains are not required to stop or check simply because they see ahead of them upon or approaching the track persons who are apparently without disability and of sufficient age to understand the hazards of a railroad

presumption is good policy, because without it train travel would be significantly hindered.[9]

---

track, always to be recognized as 'a perpetual menace of danger.' "); *Bloch v Detroit United R*, 211 Mich 252, 259; 178 NW 670 (1920) ("[Motormen] are not bound to anticipate that a pedestrian will not step off or to be prepared for a contingency so unlikely to happen."), citing *Griewski v Ironwood & B R & Light Co*, 209 Mich 10; 176 NW 439 (1920); *Berlin v Chicago & NW R Co*, 261 Mich 479, 482; 246 NW 191 (1933) (saying that there is "no duty on the part of the defendant to stop its train if the train crew saw plaintiff was running towards the track"); *Buchthal v New York Central R Co*, 334 Mich 556, 562; 55 NW2d 92 (1952) ("We have held that at a country crossing there is no reason to slacken speed unless danger is apparent."), citing *Tucker v Chicago & Grand Trunk R Co*, 122 Mich 149; 80 NW 984 (1899); *Knickerbocker v Detroit, G H & M R Co*, 167 Mich 596; 133 NW 504 (1911); *Rushford-Surine v Grand Trunk R Co*, 239 Mich 19; 214 NW 168 (1927); *Tomes v Detroit, T & I R Co*, 240 Mich 133; 215 NW 308 (1927); *Winchell v Detroit & M R Co*, 102 Mich App 433, 437; 301 NW2d 884 (1980) ("[P]laintiff claims the trial court erred by instructing the jury that '(u)nder the Michigan law, there's no duty for a railroad to reduce its speed until it realizes that a car won't stop'. This instruction was correct according to [*Buchthal*] . . . ."); *Frye v CSX Transp, Inc*, 933 F3d 591, 600-601 (CA 6, 2019) ("Until it becomes apparent otherwise, train crew members can reasonably assume a person on the tracks—adult or child—will move off the tracks in time to avoid a collision."), citing *Tomes*, 240 Mich 133. See also 2 Restatement Torts, 2d, § 336, pp 190-191, and comment *d*, illustration 3, p 193 ("A is walking along the right of way of the X & Y Railroad Company. The engineer of an approaching train sees A while 200 yards away. The train is going so slowly that it could readily be stopped within 100 yards. The engineer blows the whistle. A, hearing it, turns around and apparently sees the train approaching. *The engineer is entitled to assume that A knows of the approach of the train and will protect himself from harm by stepping off of the tracks before it reaches him*.") (emphasis added).

[9] *Lake Shore*, 25 Mich at 280 ("A more stringent rule than this—a rule that would require the engineer to check his speed or stop his train, whenever he sees a team crossing the track or a man walking on it, far enough ahead to get out of the way in time, until he can send ahead to inquire why they do not . . . —any such rule, if enforced, must effectually put an end to all railroads, as a means of speedy travel or transportation, and reduce the speed of trains below that of canal-boats forty years ago; and would effectually defeat the object of the legislature in authorizing this mode of conveyance."); *Bloch*, 211 Mich at 259 ("Were motormen required to prepare to stop every time a man appeared on the track, cars would make little progress and there would be no such thing as rapid transit. They are not bound to anticipate that a pedestrian will not step off or to be prepared for a contingency so unlikely to happen.").

When does that presumption give way to a duty to act to avoid a collision? A train operator must take action to avoid a collision when it becomes apparent that the person will not or cannot move off the tracks. After recounting the presumption, *Lake Shore*, 25 Mich at 279, continues:

> [An engineer], therefore, has the right to go on, without checking his speed, *until he sees that the team or the man is not likely to get out of the way*, when it would become his duty to give extra alarm by bell or whistle, and if that is not heeded, then, as a last resort, to check his speed or stop his train, if possible, in time to avoid disaster. [Emphasis added.]

In other words, when a person is on the track "and it is seen that he fails to recognize the peril of his situation, and the warnings given thereof, it is the duty of the engineer, and humanity requires, that he should slow down his train; and, if necessary to preserve life or limb, come to a full stop." *Bouwmeester v Grand Rapids & I R Co*, 63 Mich 557, 561; 30 NW 337 (1886).[10] This rule has been consistently applied even in more recent cases. For example, *DeCorte v New York Central R Co*, 377 Mich 317, 328; 140 NW2d 479 (1966) (opinion by DETHMERS, J.), succinctly stated, "The railroad has the right-of-way and the engineer might assume that the truck would stop until it became apparent that the truck

---

[10] See also *Laethem v Ft Wayne & BI R Co*, 100 Mich 297, 302; 58 NW 886 (1894) ("[The plaintiff's] sleigh was in full view of the driver [of the train], and, if the driver saw that he could not get out in time, he should have stopped."); *Redson v Michigan Central R Co*, 120 Mich 671, 676; 79 NW 939 (1899) (saying that the train engineer "was not required to check the speed of his train, or to take means to stop it, until he was chargeable with clear notice that the horses and [the plaintiff] were in danger, and could not get off the track before the engine reached them"); *Wade v Detroit, Y, AA & J R Co*, 151 Mich 684, 686; 115 NW 713 (1908) ("The motorman was under no obligation to keep a lookout for trespassers. His legal duty was to sound his gong or blow his whistle when he saw the boys on the track, and to take all precautions possible to stop his car when he discovered that they were not aware of his approach.").

could not or would not stop."[11]  The rule applies to children as well as adults, so long as the children appear old enough to appreciate the danger.[12]  When exactly it becomes

[11] See also *Buchthal*, 334 Mich at 562 ("We have held that at a country crossing there is no reason to slacken speed *unless danger is apparent*.") (emphasis added); *Winchell*, 102 Mich App at 437 ("[P]laintiff claims the trial court erred by instructing the jury that '(u)nder the Michigan law, there's no duty for a railroad to reduce its speed *until it realizes that a car won't stop*'.  This instruction was correct . . . .") (emphasis added); *Frye*, 933 F3d at 597 ("When a person is on the tracks, as opposed to approaching them, *a train engineer is bound to slow or stop the train for those who are apparently unaware of the danger and do not hear or notice warnings signals*.") (emphasis added).  See also 20 Mich Civ Jur, Railroads, § 63, p 644 ("[A]n engineer discharges the engineer's legal duty toward trespassers upon a fenced track if the engineer sounds the gong or blows the whistle when the engineer sees the trespasser, *and takes all care possible to stop when the engineer discovers that they are not aware of the train's approach*[.]"), citing *Wade*, 151 Mich at 686 (emphasis added).  Cf. *Louisville & N R Co v Womack*, 173 F 752, 755 (CA 6, 1909) (relying on a Tennessee statute stating, " 'Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident.' "), quoting Shannon's Code Tenn § 1574(4).  Michigan has no such statute.

[12] See, e.g., *Knickerbocker*, 167 Mich at 596 (applying the presumption to a 10-year-old boy); *Tomes*, 240 Mich at 138-139 (applying the presumption and noting that the "[d]eceased was not a little child, but a high school student nearly 14 years old, intelligent, normal, and familiar with this crossing, its surroundings, conditions, and dangers.  There is no proof of anything in her appearance or conduct suggesting anything abnormal in her appearance or actions as she walked towards the crossing"); *Berlin*, 261 Mich 479, 482 (applying the presumption to a nine-and-a-half-year-old).  Cf. *Keyser v Chicago & Grand Trunk R Co*, 56 Mich 559, 562; 23 NW 311 (1885) (noting a duty to slow the train when the defendant saw an "apparent obstruction" that was, in fact, the two-and-a-half-year-old plaintiff).

Plaintiff contends that the presumption does not apply to every case—namely, to cases in which the facts immediately suggest that a person would be unaware of the coming danger of the train.  *Lake Shore* does begin with the premise that the engineer "sees a man walking along upon the track . . . and *is not aware that he is deaf or insane, or from some other cause insensible of the danger* . . . ."  *Lake Shore*, 25 Mich at 278 (emphasis added).  However, whereas plaintiff contends that the presumption does not apply in every case, it can also be said that the presumption applies to all cases but simply gives way to a duty to

apparent that a person will not move off the tracks and what is a reasonable action to fulfill the duty to take steps to avoid a collision once that duty arises will depend on the particular facts of each case.[13]

## B. APPROACHING CASES DECIDED UNDER THE DOCTRINE OF CONTRIBUTORY NEGLIGENCE

Plaintiff contends that the caselaw prior to our adoption of comparative negligence is of questionable applicability. We adopted comparative negligence in *Placek v Sterling Hts*, 405 Mich 638; 275 NW2d 511 (1979), and much of the relevant caselaw predates *Placek*. Under our current comparative-negligence scheme, a plaintiff whose negligence contributed to their injury may still recover against a negligent defendant. The plaintiff's damages award is simply reduced to reflect the extent of the plaintiff's own fault.[14] Prior to *Placek*, Michigan courts followed the doctrine of contributory negligence. Under a contributory-negligence scheme, a plaintiff could not recover in a negligence action if their

---

act to avoid a collision nearly immediately when a person is very clearly unable to heed the danger of the coming train. Because we at present see no practical ramifications for the instant case depending on whether the presumption does not apply or whether the presumption applies but gives way nearly immediately, we decline to address the issue.

[13] *Lake Shore*, 25 Mich at 293 ("Courts may not always be able to define precisely all the particulars which would be necessary to constitute diligence under all circumstances . . . . I shall not undertake to lay down a universal rule applicable to all cases.").

[14] *Kandil-Elsayed*, 512 Mich at 118-119 (recounting the switch to comparative negligence); *Poch v Anderson*, 229 Mich App 40, 48; 580 NW2d 456 (1998) ("Under a pure comparative negligence system, a plaintiff's negligence merely reduces the amount of the plaintiff's recovery. Liability is allocated in proportion to the parties' degree of fault."), citing *Jennings v Southwood*, 446 Mich 125, 130-131; 521 NW2d 230 (1994); *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 98; 485 NW2d 676 (1992) ("Under this doctrine [of comparative negligence], a defendant may present evidence of a plaintiff's negligence in order to reduce liability.").

own negligence also caused the injury.[15]  In other words, during the pre-*Placek* era, cases were often resolved without defining the full scope of the defendant's duty because they could be decided solely on the basis of the plaintiff's contributory negligence, which generally served as a complete bar to recovery.[16]  A negligent plaintiff could recover only if the defendant was grossly negligent.[17]

---

[15] *Kandil-Elsayed*, 512 Mich at 113; *Riddle*, 440 Mich at 98.  See also *Williams v Michigan Central R Co*, 2 Mich 259, 265 (1851), overruled in part on other grounds by *Advisory Opinion on Constitutionality of 1976 PA 295, 1976 PA 297*; 401 Mich 686 (1977); *Lake Shore*, 25 Mich at 277.

[16] See *Kirby v Larson*, 400 Mich 585; 256 NW2d 400 (1977), overruled in part by *Placek*, 405 Mich 638.  In *Kirby*, the plaintiff and the defendant were involved in an automobile accident, and the trial court instructed the jury on contributory negligence:

> "[I]f you find that [the plaintiff] was personally and contributorily negligent and such negligence was a proximate cause of the injury and damages alleged by her and in that event [the plaintiff] *cannot recover from the defendant* and your verdict therefore would be for the defendant."  [*Kirby*, 400 Mich at 595 (opinion by WILLIAMS, J.) (emphasis added).]

The jury found for the defendant.

See also *Bricker*, 313 Mich at 235 ("Our holding herein should not be construed as excluding under appropriate circumstances the defense of contributory negligence on the part of the [plaintiff], if relative to the cause of the accident the [plaintiff] failed to exercise such reasonable care and caution as he should have exercised under the circumstances."); *Williams*, 2 Mich at 265 ("It is a well settled principle of law, that where an injury, of which a plaintiff complains, has resulted from the fault or negligence of himself, or where it has resulted from the fault or negligence of both parties, without any intentional wrong on the part of the defendant, *an action cannot be maintained*.") (emphasis added).

[17] See, e.g., *Denman v Johnston*, 85 Mich 387, 396; 48 NW 565 (1891) ("If [the plaintiff] cannot set up such a combination of facts as show that he is free from negligence on his part, he must by proper allegation set up that the injury was caused by the wanton or willful negligence of defendant, such as in law amounts to gross negligence, and a reckless disregard of the consequences of his neglect.").

However, there is no support for the proposition that our switch to comparative negligence invalidated large swaths of prior caselaw. Particularly, precedents regarding the scope of a defendant's duty remain valid. As *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 98; 485 NW2d 676 (1992), stated in the premises-liability context, "Although the adoption of comparative negligence may have limited a defendant's defenses, the defendant's initial duty has not been altered."[18] More specifically, the principle set out in *Lake Shore* regarding when the presumption that a person will move off the tracks gives way to a duty to act to avoid a collision remains. Indeed, modern cases continue to abide by it.[19]

Yet, pre-*Placek* precedent should not be unthinkingly applied to modern cases, as the switch to comparative negligence has created distinctions that sometimes preclude the application of older caselaw. The adoption of comparative negligence removed a barrier to recovery, thus broadening the category of plaintiffs who could recover for claims of ordinary negligence. The adoption of comparative negligence also affected how damages awards are calculated. Again, neither of those outcomes of comparative negligence relates to when the presumption that a person will move off the tracks gives way to a duty to act

---

[18] See also *Riddle*, 440 Mich at 98 n 12 ("Judge SAWYER's discussion of comparative negligence in his dissent in *Pressley v VFW Memorial Home, Inc*, 185 Mich App 709, 712-713; 462 NW2d 830 (1990) is helpful here. He states: '[C]omparative negligence does not itself directly involve issues of duty or breach of duty. Rather, it deals with the proper and just apportionment of fault, and responsibility, where both the plaintiff and the defendant are negligent. Comparative negligence does not, however, create negligence where none existed before that doctrine was adopted. That is, the adoption of comparative negligence did not create duties where none existed before.' ").

[19] See note 11 of this opinion.

to avoid a collision; therefore, it makes sense that the presumption and events triggering the duty remain unchanged. However, the lower bar to recovery does mean that courts should approach older caselaw cautiously. For example, if a pre-*Placek* court ruled against a plaintiff because they could not prove gross negligence on particular facts, those same facts might prove ordinary negligence and justify ruling in favor of a plaintiff in a current case. Or if a plaintiff's negligence barred them from recovering for an ordinary negligence claim under the contributory-negligence doctrine, that plaintiff would, on the same facts, be able to recover today. In short, a nuanced view of the claims and defenses at issue, as well as, of course, any important factual differences is necessary before applying pre-*Placek* caselaw to current cases.

### C. SUMMARY DISPOSITION WAS NOT WARRANTED

As stated earlier, train operators can presume a person will move to a place of safety until it is apparent they will not, at which time the train operators have a duty to take action to avoid a collision. This presumption is unaffected by the switch to comparative negligence. Applying that rule to the instant case, we agree with the Court of Appeals that summary disposition was not warranted here.

As stated, defendants first saw Jacob when he was about three-quarters of a mile away. When Jacob was about 18 or 19 seconds away, defendants sounded the horn as they approached the crossing. Defendants then saw that Jacob was not responding, as evidenced by Golombeski's remark to Wilson. After the train went past the Oak Street crossing, Wilson again commented that Jacob had not responded, so he sounded another horn.

14

Defendants finally applied the emergency brake approximately one second before the train hit Jacob.

There remain genuine issues of material fact that preclude summary disposition at this point. Though the time line is relatively undisputed, "[a] question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence."[20] A reasonable juror could conclude that defendants were negligent in sounding a second horn rather than applying the emergency brake when it first became apparent that Jacob would not move, i.e., after Jacob failed to heed the initial horn blast before the crossing.[21]

---

[20] *Dextrom*, 287 Mich App at 416. Cf. *Lake Shore*, 25 Mich at 293-294 ("[T]here may even be cases depending upon a complication of facts and circumstances admitted or found to be true, in which it would be better to leave the jury to draw the inference of diligence or negligence than to undertake to draw it themselves; but even in such cases, it will be found that some principle of law may be laid down for the guidance of the jury. I shall not undertake to lay down a universal rule applicable to all cases. It is frequently difficult, perhaps sometimes impossible, to determine how far the question of negligence or reasonable diligence is a question of law, and how far a question of fact. It is generally a question of mixed law and fact; and always, when the facts are found or omitted, if they be such that all reasonable men will be likely to draw from them the same inferences, it is a question of law for the court.").

[21] Additionally, there is a question of whether defendants may have had a duty to sound the horn earlier than they did. At oral argument, plaintiff's counsel recounted that defendants saw Jacob on the tracks when they were approximately two minutes away but did not sound the horn until they were approximately 18 seconds away. Plaintiff contended that defendants should have sounded the horn earlier. Defendants, on the other hand, pointed to 49 CFR 222.21(b)(2) ("[T]he locomotive horn shall begin to be sounded at least 15 seconds, but no more than 20 seconds, before the locomotive enters the crossing.") and 49 CFR 222.23(a)(1) ("Notwithstanding any other provision of this part, a locomotive engineer may sound the locomotive horn to provide a warning to animals, vehicle operators, pedestrians, trespassers or crews on other trains in an emergency situation if, in the locomotive engineer's sole judgment, such action is appropriate in order to prevent imminent injury, death, or property damage."). Defendants argued that those regulations prohibited them from sounding the horn earlier. This issue of whether the horn should have been sounded earlier was not squarely raised in the parties' briefs to our Court, but the question of whether defendants should have sounded the horn earlier, including whether

Compare the above facts to those of *Bouwmeester*, 67 Mich at 90, in which our Court affirmed a judgment in favor of the defendant railroad, concluding that the defendant was not grossly negligent because the engineer

> was not aware that [the deceased] was unconscious of the whistles, or would not heed them, until he was within three or four hundred feet of the deceased. Then he immediately applied the brakes with full force, and made every possible effort to stop the train, at the same time continuing the danger signals.

In *Bouwmeester*, the engineer applied the brakes immediately upon realizing that the person on the tracks would not heed the whistle. That action was at least not gross negligence, and indeed would seem to be not negligent at all under the rule set out in *Lake Shore*.[22] In contrast to the facts in *Bouwmeester*, here defendants realized that Jacob was not responding, but opted to try blowing the horn again and did not apply the brakes until approximately one second before impact. Given these facts, a reasonable person could conclude that it became apparent at some point before the collision that Jacob would not or could not respond to the danger and that defendants had a duty to act sooner than they did to avoid hitting him.[23]

---

they were allowed to do so under federal regulations, is relevant in determining whether defendants were negligent.

[22] See also *Holmes v Detroit, GH & M R Co*, 171 Mich 633, 646; 137 NW 540 (1912) ("[A]s soon as it was apparent the decedent would not heed the signals, every effort was made to stop the train.").

[23] Cf. *Montgomery v Lansing City Elec R Co*, 103 Mich 46, 52; 61 NW 543 (1894) (concluding that there was sufficient evidence of gross negligence for the issue to go to a jury when "[t]he motorman knew that [a band that was playing in a street parade] was ahead of the car. He recognized the danger of those on the west side being blown upon the track [by a high wind]. He saw [the plaintiff], and knew he was in close proximity to the track; heard the band playing, and knew that the noise of the approaching car would be liable to be drowned by the noise of the band; yet, if the testimony of the plaintiff's

There also remains a question of fact regarding defendants' ability to stop the train had they braked as soon as duty required. The first horn was sounded 18 to 19 seconds before the collision, but the train took approximately 30 seconds to stop. Whether it was possible to stop the train may bear on what actions defendants should have taken when the duty to take steps to avoid a collision was triggered.[24] If reasonable minds were to conclude that duty required defendants to apply the brake after Jacob failed to heed the first horn, they might also be able to find that it was possible to stop the train. In sum, given all the above genuine questions of material fact, we do not believe defendants are entitled to summary disposition at this time.[25]

---

witnesses be true, he did not slacken his speed. He kept the lever in next to the fastest notch, at least until within a few feet of these parties; and the testimony shows the car must have been under considerable speed, as it ran over 30 feet after causing the injury, though the motorman claims to have stopped it as soon as he could after it struck; while, if he had had it under control, it is plain, from his own testimony, he could have prevented the injury").

[24] See Restatement Torts, 2d, § 336, pp 190-191; see also comment *d*, illustration 3, p 193 ("A is walking along the right of way of the X & Y Railroad Company. The engineer of an approaching train sees A while 200 yards away. *The train is going so slowly that it could readily be stopped within 100 yards*. The engineer blows the whistle. A, hearing it, turns around and apparently sees the train approaching. The engineer is entitled to assume that A knows of the approach of the train and will protect himself from harm by stepping off of the tracks before it reaches him. If, however, the engineer, after blowing the whistle, sees that A does not hear the warning or is unable or obviously intends not to obey it, the Railroad Company is subject to liability for running down A *if the engineer fails to take reasonable care, after reaching a point 100 yards from A, to stop the train so as to avoid running A down*.") (emphasis added).

[25] While the current posture of this case at the summary-disposition stage deals primarily with whether a duty existed and was breached, if a fact-finder concludes that there was a breach, this will impact the comparative-negligence analysis as related to harm and damages. Whether the train could have stopped in time to avoid a collision might also relate to damages.

## IV. CONCLUSION

The longstanding rule continues even now: When a train operator sees a person on the tracks, there is a presumption that the person will move to a place of safety. But when it becomes apparent that the person will not or cannot get out of the way, that presumption is overcome, and the train operator has a duty to take steps to avoid a collision. Because there remain genuine issues of material fact as to whether defendants were negligent, we affirm the Court of Appeals' ruling in favor of plaintiff and remand to the trial court for proceedings not inconsistent with this opinion.

Elizabeth T. Clement
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

STATE OF MICHIGAN

SUPREME COURT

MONICA MARION, Personal
Representative of the ESTATE OF JACOB
MARION,

        Plaintiff-Appellee,

v                                                                                      No. 164298

GRAND TRUNK WESTERN RAILROAD
COMPANY, STEVEN GOLOMBESKI, and
JESSIE WILSON,

        Defendants-Appellants.

_____

VIVIANO, J. (*concurring in part*).

I agree with the majority opinion that this Court has long recognized a legal presumption that a person will leave the railroad tracks when a train is approaching and that a duty to act to avoid a collision only arises when it becomes apparent to the train operator that the person will not or cannot get out of the way. See *Lake Shore & MS R Co v Miller*, 25 Mich 274, 279-280 (1872); see generally *DeCorte v New York Central R Co*, 377 Mich 317, 325-328; 140 NW2d 479 (1966). I also agree with the majority's decision to affirm the Court of Appeals' conclusion that there exists a material question of fact in this case, but I believe the relevant fact questions in this case are better stated as (1) at what point it became apparent to defendants that Jacob Marion would not get off the tracks, and (2) whether this occurred when there was still time to avoid the collision. I therefore concur in part with the majority opinion.

Plaintiff offered expert testimony in the trial court stating that defendants should have sounded the horn when they first saw Jacob on the tracks, approximately three-quarters of a mile away and walking in the same direction that the train was traveling. One of the train conductors also testified during a deposition that, "when we first saw [Jacob]," the other conductor said, "[s]omebody is on the track and he's not responding. I don't think he's going to move." While there is some dispute as to when those remarks were made, when considering a motion for summary disposition under MCR 2.116(C)(10), the facts must be viewed in the light most favorable to plaintiff. See *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Viewing this testimony in the light most favorable to plaintiff, it would appear that defendants may have had good reason to believe that Jacob was not going to move off the tracks when there was still time to avoid the collision. See *Lake Shore*, 25 Mich at 279 (holding that, at that point, it becomes "[the train operator's] duty to give extra alarm by bell or whistle, and if that is not heeded, then, as a last resort, to check his speed or stop his train, if possible, in time to avoid disaster").

But if the fact-finder does not credit this testimony, then I do not see how it would have been possible for the train to stop in time to avoid the collision. The majority holds that "[a] reasonable juror could conclude that defendants were negligent in sounding a second horn rather than applying the emergency brake when it first became apparent that Jacob would not move, i.e., after Jacob failed to heed the initial horn blast before the crossing." *Ante* at 15. The majority observes that "the first horn was sounded 18 to 19 seconds before the collision, but the train took approximately 30 seconds to stop." *Ante* at 17. *Lake Shore* does not require a train operator to brake whenever the operator sees a person on the tracks. Rather, a train operator may presume that a person in peril will get

2

out of the way unless the operator has reason to believe the person is "deaf or insane, or from some other cause insensible of the danger," and therefore is "not likely to get out of the way . . . ." *Lake Shore*, 25 Mich at 279 (italics omitted). In this case, unless defendants had good reason to believe that Jacob would not get off the tracks at an earlier point in time, it does not appear that this tragic accident could have been avoided.

For these reasons, I concur in part with the majority opinion, but would hold that the relevant questions of fact are at what point it became apparent to defendants that Jacob would not get off the tracks and whether that occurred when there was still time to avoid the collision.

David F. Viviano

3